# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAZEYEH JAFARZADEH ) <br> 1629 Columbia Rd., NW, Apt. 307 ) <br> Washington, DC 20009 ) <br> ) <br> MANOUCHEHR JAFARZADEH ) <br> 20557 Summersong Lane ) <br> Germantown, MD 20874 ) <br> ) <br>     Plaintiffs, ) <br> ) <br>        -V- ) <br> ) <br> JEH JOHNSON, Secretary ) <br> Department of Homeland Security ) <br> Washington, D.C.  20528 ) <br> ) <br> LEON RODRIGUEZ, Director ) <br> U.S. Citizenship & Immigration Services ) <br> 20 Massachusetts Avenue, NW ) <br> Washington, D.C. 20001 ) <br> ) <br> GREGORY COLLETT, District Director ) <br> U.S. Citizenship and Immigration Services ) <br> 3701 Koppers St. ) <br> Baltimore, MD 21227 ) <br> ) <br> CONRAD ZARAGOZA, Field Office Director ) <br> U.S. Citizenship and Immigration Services ) <br> 3701 Koppers Street ) <br> Baltimore, MD  21227 ) <br> ) <br> JAMES COMEY, Director ) <br> Federal Bureau of Investigation ) <br> 935 Pennsylvania Avenue, NW ) <br> Washington, D.C. 20535-0001 ) <br> ) <br> LORETTA LYNCH, Attorney General ) <br> U.S. Department of Justice ) <br> 950 Pennsylvania Avenue, NW ) <br> Washington, DC 20530-0001 ) <br> ) <br>     Defendants. ) <br> _____) | A Number: A028651248 <br><br><br><br><br><br><br><br><br> Case No. _____ <br><br><br><br><br><br><br><br><br><br><br><br><br> CIVIL COMPLAINT IN THE NATURE <br> OF WRIT OF MANDAMUS |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.     INTRODUCTION

1.     Razeyeh Jafarzadeh ("Plaintiff Razeyeh") is a natural born U.S. citizen, and her father, Manouchehr Jafarzadeh ("Plaintiff Manouchehr") is a native and citizen of Iran. On January 25, 2010, Plaintiff Razeyeh properly filed a Petition for Alien Relative (USCIS Form I-130) on behalf of her father Plaintiff Manouchehr. Plaintiff Manouchehr filed a concurrent Application to Register Permanent Residence or Adjust Status as her immediate relative (USCIS Form I-485).

2.     The alien relative petition and application for adjustment have been pending for more than six (6) years due to the failure of the USCIS to perform its duty. For reasons that USCIS has never disclosed to Plaintiff Manouchehr, his application has been diverted to a parallel, extra-legal adjudication track administered by USCIS called the "Controlled Application Review and Resolution Program" ("CARRP").

3.     USCIS secretly established and implemented CARRP in 2008 without providing any public notice of its existence or development. The program prohibits USCIS field officers from approving applications for certain immigration benefits (including lawful permanent resident status) where the application is deemed to pose a "national security concern" as broadly defined under CARRP guidance. Instead, CARRP directs USCIS field officers to delay adjudication of, or deny outright, applications selected for processing under CARRP. The predictable result: individuals who are statutorily eligible for lawful permanent resident status, such as Plaintiff Manouchehr, unjustly face years of delay and eventual denial of their applications on pretextual grounds.

4.     Plaintiffs Razeyeh and Manouchehr petition this Court to compel USCIS to act on the properly filed alien relative petition and application for adjustment of status. In addition, they challenge the use of CARRP as a violation of the Immigration and Nationality Act, the Administrative Procedure Act, a violation of procedural due process, and action the Government should be estopped from taking given its affirmative misconduct. Because CARRP directs USCIS not to approve any applications benefiting persons on the Terrorist Watch List, Plaintiff Manouchehr seeks the court to enjoin USCIS from applying CARRP when adjudicating his applications.

## II.     JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, (federal question jurisdiction); 28 U.S.C. §2201 (the Declaratory Judgment Act); 5 U.S.C. §701 et seq. (the Administrative Procedures Act), and 28 U.S.C. § 1361 (regarding an action to compel an officer of the United States to perform his or her duty). Relief is requested pursuant to said statutes. This Court has previously found jurisdiction over the Form I-485 application. See *Liu v. Novak*, 509 F. Supp. 2d 1 (D.D.C. 2007).

6.      Venue is appropriate in the United States District Court for the District of Columbia, because the actions which violate these statutes occurred in whole or in relevant part within the District of Columbia.

## III.    PARTIES

7.      Plaintiff Razeyeh Jafarzadeh ("Plaintiff Razeyeh") is a U.S. citizen residing in the District of Columbia. Plaintiff Razeyeh petitioned to classify her father, Plaintiff Manouchehr Jafarzadeh ("Plaintiff Manouchehr"), as an immediate relative through the filing of a USCIS Form I-130 on January 25, 2010.

8.      Plaintiff Manouchehr Jafarzadeh ("Plaintiff Manouchehr") is a citizen of Iran who has lived continuously in the United States for 37 years (except for three short trips back to Iran to visit family) since his first entry on a student visa in 1979.   Plaintiff's most recent entry into the U.S. occurred after a brief trip to Iran to visit family members in 2011, and his re-entry occurred pursuant to an advance parole document issued by USCIS in connection with his pending application for adjustment (USCIS Form I-485).

9.      Plaintiff Manouchehr is married to a lawful permanent resident ("LPR"), Shahnaz Karami. Together, the couple has three adult U.S. citizen daughters, including Plaintiff Razeyeh.

10.     Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is a division of the U.S. Department of Homeland Security. It is the federal agency responsible for the adjudication of immigration applications.

11.     Defendant U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS") is the cabinet-level federal parent agency of USCIS, and the agency responsible for the administration and enforcement of the country's immigration and naturalization laws.

12.     Defendant GREGORY COLLETT is the Director of USCIS's District 6 – Baltimore District Office. He is the official in charge of the USCIS office where Plaintiff Manouchehr was interviewed.  He is sued in his official capacity.

13.     Defendant CONRAD ZARAGOZA is the Field Office Director of the Baltimore District Office of USCIS, and is the official in charge of the USCIS office where Plaintiff was interviewed. He is sued in his official capacity.

14.     Defendant LEON RODRIGUEZ is the Director of USCIS, the agency responsible for adjudicating Plaintiff Manouchehr's application for lawful permanent resident status. As the Director of USCIS, he has the final authority within USCIS for all decisions of his agency. He is sued in his official capacity.

15.     Defendant JEH JOHNSON is the Secretary of DHS, and maintains ultimate responsibility for overseeing the actions of USCIS officials. He is sued in his official capacity.

**IV.     FACTUAL BACKGROUND:**

16.     Plaintiff Manouchehr first entered the United States on a student visa in 1979. Since his initial entry, he has left the U.S. on only three occasions: once in 1984, again in 1994 and once in 2011. Following each temporary absence, he was either re-admitted as a student or paroled into the U.S. pursuant to the advance parole documents issued to him by USCIS.

17.     Plaintiff Manouchehr' s studies culminated in a master's degree in computer science from Jackson State University in Mississippi in 1990, and a master's degree in business administration from Jackson State in 1991.

18.     Since June of 1991, Plaintiff Manouchehr has been employed by the Interests Section of the Islamic Republic of Iran, which operates out of the Embassy of Pakistan at 1250 23rd St NW, Washington, DC 20037. His employment there has involved primarily cultural affairs and public relations.

19.     Plaintiff Manouchehr filed this Form I-485 concurrently with the Form I-130 petition filed by his U.S. citizen daughter on January 25, 2010.  The alien relative petition and application for permanent residence have now been pending over 6 years without adjudication by USCIS. Since the filing of this application, Plaintiff Manouchehr has been interviewed on two occasions by USCIS, in 2011 and 2014, and has been interviewed and/or contacted by FBI Special Agents

Matthew Halverson and Rebecca Bailey along with other agents multiple times. These agents most recently attempted to interview Plaintiff Manouchehr on July 9, 2014 via text message.

20.     Plaintiff Manouchehr has endured years of harassment by the FBI and USCIS. He has been interviewed twice by USCIS on his application for adjustment, with one aggressive interview lasting more than three hours and reaching back to questions regarding his student activism more than 30 years prior.

21.     Since his application for adjustment of status in 2010, Plaintiff Manouchehr has also been contacted on numerous occasions by FBI agents for interviews. These interviews consisted of requests for information about the Iranian community in the United States, Plaintiff Manouchehr's political leanings, his and his family's opinions of the Iranian government, and other matters unrelated to his immigration application.

22.     The content and nature of these interviews make clear that the FBI seeks Plaintiff Manouchehr's cooperation as an informant, a role he is unwilling to undertake. In recent years the FBI has increased its harassment of Plaintiff Manouchehr and has made it extremely difficult for him to travel domestically by plane, subjecting him to extensive searches and on many trips Air Marshalls travel with him.  He was greeted at the airport by FBI agents upon his last return from his overseas trip.  He has been denied entry to the National Institutes of Health (NIH) to visit a sick friend and since 2012, even his ancillary applications for work authorization and advance parole remain un-adjudicated despite USCIS processing times of three months for such applications.  On more than one occasion, Plaintiff Manouchehr has returned home from work and found FBI agents waiting for him outside his home. On one particularly alarming occasion, Plaintiff Manouchehr left an appointment with his immigration attorney only to find FBI agents waiting for him in the parking lot outside of his attorney's office, where they escorted him to a local park to question him more intensely outside the presence of counsel. While Plaintiff Manouchehr has cooperated with these interrogations, he has made it clear that he is not willing to become a government informant.  It is Plaintiff Manouchehr's understanding that were he willing to be an informant, the FBI would use its influence to remove the roadblocks hindering the adjudication of his applications before the USCIS.

23.     It has now been over thirty years since Plaintiff Manouchehr was first contacted by the FBI.  He denies ever having provided support to, expressed support for, or of having engaged in, terrorism or terrorist-related activity.  Notwithstanding the absence of such evidence, the FBI persists in monitoring his activity, pestering him to become an informant, and, by adding him to its database of terrorism suspects, caused the USCIS to place him under the jurisdiction of its

Controlled Application Review and Resolution Program (CARRP). Plaintiff Manouchehr alleges that the FBI has engaged in a gross abuse of government power by designating him as a terrorist threat without basis and for the purpose of compelling him to cooperate as a government informant against his will. Parallel conduct of attempting to force someone to act against his or her will when it is engaged in by private individuals is subject to severe penalties under the criminal codes of this country.

24. Plaintiff Manouchehr asserts that his case has been designated under the Controlled Application Review and Resolution Program ("CARRP") based on his inclusion in the Terrorism Screening Database, and that as a result, USCIS will delay or deny his application for adjustment of status without consideration and in violation of its statutory duty. Plaintiff Manouchehr further asserts that USCIS and FBI have conspired to exploit the suspended adjudication of his application to compel him into service as a government informant.

*The Controlled Application Review and Resolution Program ("CARRP")*

25. In April 2008, USCIS created CARRP, an agency-wide policy for identifying, processing, and adjudicating applications for certain immigration benefits. Promulgated in secret, CARRP's policies and procedures have come to light as a result of the Government's production of documents in connection with Freedom of Information Act ("FOIA") requests and FOIA litigation.

26. CARRP's criteria for inclusion in its separate, extra-legal adjudications track are not tethered to any of the statutory requirements governing immigration. Under CARRP, a person is considered a "national security concern" if it is determined that he or she is a "Known or *Suspected* Terrorist" (KST) (*emphasis added*).

27. CARRP counts any and all individuals listed in the Terrorism Screening Database as KSTs. The Terrorism Screening Database, also known as the Terrorist Watch List ("the Watchlist"), is a vast and unreliable government watch list that is owned by the Federal Bureau of Investigations and administered by the National Counterterrorism Center. There is no due process procedure for placement on or removal from the Watchlist.

28. CARRP also includes individuals referred to as "Non-Known or Suspected Terrorists" (Non-KSTs). Non-KSTs are any person whose application indicates an "articulable link to prior, current, or planned involvement in, or association with, an activity, individual or organization" that has engaged in terrorist activity or been a member of a terrorist organization. Because of CARRP's expansive and overly broad definition of "national security concern," an applicant for

6

lawful permanent resident status can still be subjected to adjudication under CARRP, even without being engaged in any unlawful activity or joining any unlawful organization.

29.     Once an application is selected for processing under CARRP, USCIS removes the application from the agency's routine adjudication track and places it on a separate CARRP track. Applications on the CARRP track are not subject to standard adjudication and are reviewed under protocols that lack any authority or foundation in statute or regulation. With only limited exceptions, CARPP mandates denial or perpetual delay of applications placed on its adjudications track regardless of the applicant's statutory eligibility for a particular immigration benefit.

**CARRP and the Terrorism Screening Database:**

30.     Nominations to the Watchlist are governed by vague selection criteria that permit inclusion in the database even if there is no reasonable suspicion that the person is actually involved in terrorist activity. The TSDB has come under widespread criticism for mismanagement and failures on the part of the FBI to adequately screen out individuals who pose no national security threat. As a result of the TSDB's over-inclusive selection criteria and inadequate procedures for ensuring proper screening, the database is enormous; in 2009, it included roughly 400,000 individuals.

31.     At each step in the processing of an application subject to CARRP, adjudication is steered towards one of two outcomes: delay or denial. In the initial stages of the adjudication of applications subject to CARRP, USCIS officers are instructed to perform an enhanced "eligibility assessment" to determine whether the applicant qualifies for the benefit. In the Orwellian world of CARRP, such "assessment" is far from the neutral review its name would suggest. To the contrary, CARRP instructs officers performing an "eligibility assessment" to search for any possible basis to deny an application, no matter how tenuous, so that "valuable time and resources are not unnecessarily expended" on investigating the supposed "national security concern" that triggered the application's selection for CARRP. Upon information and belief, eligibility assessments for applications subject to CARRP lead to pretextual denials that lack a legitimate basis in fact and law.

32.     CARRP also cedes USCIS's control over the adjudication of immigration benefits to other federal agencies that lack statutory authority over immigration matters. Under CARRP, the law enforcement agency that "owns" the derogatory information on which the application's selection for CARRP is based can directly influence the ultimate decision on the application.

Executive agencies without any statutory authority over immigration matters can, under CARRP, request that an application be denied, granted, or held in abeyance indefinitely pending that outside agency's own investigation.

33. In fact, when an applicant is subjected to CARRP as a KST (because the applicant is listed on the Watchlist), CARRP prohibits USCIS field officers from granting the application, even if the applicant has satisfied all statutory and regulatory criteria.

34. At no point during the CARRP process is the applicant informed of the basis for his or her inclusion in CARRP, nor even that his or her application will be subjected to CARRP at all. No mechanism exists for an applicant to contest his or her selection for CARRP.

35. CARRP effectively creates two substantive regimes for the administrative adjudication of immigration applications: one for applications subject to CARRP, and one for all other applications. CARRP rules and procedures create heightened eligibility criteria that have no grounding in any of the statutes or regulations governing the immigration process. This is not what Congress intended.

## V. STATUTORY AND REGULATORY FRAMEWORK

36. Federal law allows individuals present in the United States to adjust their immigration status to that of a lawful permanent resident under Immigration and Nationality Act § 245, 8 USC § 1145. United States citizens may submit an I-130 immigrant visa petition for an immediate relative and the beneficiary may submit a concurrent I-485 application for adjustment of status at that time. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a)

37. Immediate Relatives are defined as "the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age when submitting a petition for an immediate relative." See 8 U.S.C. § 1151(b)(2)(A)(i).

38. USCIS "shall" approve the I-130 petition once it determines "that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative." See 8 U.S.C. § 1154(b).

39. Upon approval of the I-130 petition, the alien relative is eligible for adjustment of status which is determined "by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa

and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." See 8 U.S.C. § 1255(a).

40.     Immediate relative visas are not subject to numerical visa limitations and therefore once the I-130 petition is approved the "immigrant visa is immediately available to the alien relative at the time his I-485 application is filed. See 8 U.S.C. § 1151(b)(2)(A)(i), 8 U.S.C. § 1255(a).

41.     An applicant may be found inadmissible, and therefore ineligible to become a lawful permanent resident, if certain security-related grounds apply, including, inter alia, the applicant has engaged in terrorist activity, is a representative or member of a terrorist organization, endorses or espouses terrorist activity, or incites terrorist activity. See 8 U.S.C. § 1182(a)(3). USCIS's definition of a "national security concern" in CARRP is significantly broader than these security related grounds of inadmissibility set by Congress and represents an *ultra vires* overreach on the part of the USCIS. Congress has directed USCIS to process immigration benefit applications, including for adjustment of status, within 180 days. 8 U.S.C. § 1571(b).

## VI.    RELIEF

### FIRST CLAIM FOR RELIEF: *Request for decision exclusive of CARRP*

42.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1-41.

43.     Plaintiffs have satisfied all of the requirements for Plaintiff Manouchehr to be granted lawful permanent residence.

44.     Defendants have unreasonably delayed and failed to perform a mandatory action in adjudicating the application for adjustment of status, a process begun well over six years ago, thereby depriving Plaintiff Manouchehr's right to lawful permanent residence status and benefits conferred therefrom including accrual of time to apply for U.S. citizenship.

45.     Defendants owe Plaintiffs the duty to act upon their petition and application for adjustment of status and have unreasonably failed to perform that duty.

46.     Plaintiffs have exhausted any administrative remedies that may exist. No other remedy exists for Plaintiffs to resolve Defendants' unconscionable delay.

### SECOND CLAIM FOR RELIEF: *Violation of the Immigration and Nationality Act*

47.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

48.     To secure lawful permanent residence, Plaintiff Manouchehr was required to satisfy certain statutorily- enumerated criteria.

49.     CARRP creates additional, secret, non-statutory, substantive criteria that applicants must meet before USCIS will grant an application for adjustment of status subject to CARRP's rules. Furthermore, CARRP cedes the Department of Homeland Security's exclusive statutory authority over applications to federal agencies with no statutory authority over citizenship or immigration matters.

50.     The application of CARRP's unlawful, extra-statutory criteria and procedures to Plaintiff Manouchehr's case, and USCIS's abdication of its adjudicatory authority over applications for permanent resident status, are responsible for the unreasonable delay and/or unlawful constructive denial of Plaintiff Manouchehr's application for adjustment of status.

### THIRD CLAIM FOR RELIEF: *Administrative Procedure Act (Substantive Violation)*

51.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 41 as if fully stated herein.

52.     The unreasonable delay and constructive denial of Plaintiff Manouchehr's application for lawful permanent residence is an arbitrary and capricious agency action because CARRP is not in accordance with law, is contrary to the Constitution, and abdicates responsibility to apply (not create) the immigration laws. The decision denying Plaintiff Manouchehr's application for adjustment of status therefore violates the Administrative Procedure Act, 5 U.S.C. § 706.

### FOURTH CLAIM FOR RELIEF: *Fifth Amendment (Procedural Due Process)*

53.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 41 as if fully stated herein.

54.     Plaintiff Manouchehr's compliance with the statutory and regulatory requirements vests in him a constitutionally-protected property and liberty interest, triggering procedural due process protections.

55.     Defendants' refusal to give Plaintiff Manouchehr notice that his application for adjustment of status was subject to CARRP, an explanation of the basis for the decision to

subject his application to CARRP, and any process for Plaintiffs to challenge that classification, violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

*FIFTH CLAIM FOR RELIEF: APA Notice and Comment*

56. The CARRP Program constitutes a "rule" as defined by the APA, 5 U.S.C. § 551(4).

57. The APA requires administrative agencies, including DHS and USCIS, to promulgate substantive rules pursuant to its notice and comment provisions.

58. CARRP is a substantive rule, and does not fall within any of the exceptions to notice-and-comment requirements outlined at 5 U.S.C. § 553.

59. Defendants failed to provide to the public notice of CARRP or provide any opportunity for public comment, in violation of 5 U.S.C. § 553.

60. As a result of Defendants' failure to comply with the notice and comment provisions, Plaintiff Manouchehr's application for adjustment of status has been unreasonably delayed for so long it constitutes a constructive denial, and he was made subject to a predetermined negative decision which deprived him of a fair and meaningful hearing on his claim for adjustment of status. The failure to provide notice and comment has had a substantive and preordained negative outcome on his application for lawful permanent residence.

## VII.   ATTORNEY'S FEES

61. As a result of Respondents' unlawful actions, Plaintiffs were required to retain counsel and pay counsel reasonable fees and expenses. Because Respondents were not substantially justified in pursuing their actions, Plaintiffs are entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Compel Defendants and those acting under them to perform their duty to adjudicate the application for adjustment of status owed to Plaintiffs, excluding CARRP;

(2) Declare that CARRP violates the INA and its implementing regulations; Article 1, Section 8, Clause 4 of the United States Constitution (the naturalization clause); and the Administrative Procedure Act;

(3) Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from applying CARRP to the processing and adjudication of Plaintiff Manouchehr's petition for adjustment of status and declare that such action is unlawful;

(4) Declare that the application of CARRP to Plaintiff Manouchehr's petition for adjustment of status violates his right to procedural due process under the Fifth Amendment to the United States Constitution, and enjoin CARRP's application on that basis;

(5) Award Plaintiffs' costs and attorney's fees; and

(6) Grant such further relief as the Court deems just and proper.

                                                   Respectfully submitted,

                                                   /s/ Ladan Mirbagheri Smith

                                                 Ladan Mirbagheri Smith
                                                 DC Bar No.: 422367
                                                 Mirbagheri & Smith LLP
                                                 1688 East Gude Drive, Ste. #201
                                                 Rockville, MD 20850
                                                 P: 301 309 1223
                                                 F: 301 309 1229
                                                 lms@mirbagherismith.com

Dated:  June 30, 2016                        *Counsel for Plaintiff*