# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RAZEYEH JAFARZADEH &** <br> **MANOUCHEHR JAFARZADEH,** <br><br>     **Plaintiffs,** <br><br>       **v.** <br><br> **ELAINE DUKE, Acting Secretary, U.S.** <br> **Department of Homeland Security, et al.[1]** <br><br>     **Defendants.** | **Civil Action No. 16-1385 (JDB)** |

## MEMORANDUM OPINION

Plaintiff Manouchehr Jafardzadeh is a non-citizen who is lawfully present in the United States and who applied for an adjustment of status to become a lawful permanent resident. His U.S. citizen daughter, Razeyeh Jafardzadeh, filed the corresponding application for Manouchehr to become a lawful permanent resident as an immediate relative of a U.S. citizen. The United States Citizenship and Immigration Service (USCIS), the agency within the Department of Homeland Security (DHS) that adjudicates these applications, granted her application but denied his. Although he may only challenge the ultimate determination of his application through administrative proceedings and then an appeal to the circuit court, he instead seeks to challenge the process by which USCIS adjudicated his initial application through a suit in this Court. He alleges that USCIS employs a procedure for reviewing certain applications known as the "Controlled Application Review and Resolution Program," and that USCIS's use of this process without promulgating a notice-and-comment rule violates the Administrative Procedure Act and

---

[1] Elaine Duke, Acting Secretary of Homeland Security, Christopher A. Wray, Director of the Federal Bureau of Investigation, and Jefferson B. Sessions, Attorney General, have been automatically substituted for their predecessors pursuant to Federal Rule of Civil Procedure 25(d).

his right to procedural due process under the Fifth Amendment.  DHS, on the other hand, mantains that because USCIS has already made a determination and now an immigration judge will make a new determination on his application through the administrative process, the claims against USCIS are either moot or unripe.  DHS further argues that even if Manouchehr's claims are not moot or unripe, they must be dismissed because he has failed to state a claim under the Immigration and Nationality Act, the Administrative Procedure Act, or the Constitution.  For the reasons explained below, the Court will grant in part and deny in part the motion to dismiss.

## **BACKGROUND**

The facts that follow are as stated in plaintiffs' complaint, which at this stage, the Court accepts as true.  Plaintiff Manouchehr is a citizen of Iran who has lawfully resided in the United States since 1979.  Compl. [ECF No. 1] ¶ 16.  His daughter, plaintiff Razeyeh, is a U.S. citizen. Id. ¶ 1.  In January 2010, plaintiffs respectively filed the appropriate forms for Manouchehr to adjust his status to that of a lawful permanent resident: Razeyeh filed a Petition for Alien Relative (Form I-130) and Manouchehr filed a concurrent Application to Register Permanent Residence or Adjust Status (Form I-485).  Id. ¶¶ 1, 7, 19.

Since these applications were filed, USCIS has twice interviewed Manouchehr, once in 2011 and once in 2014.  Id. ¶ 19.  He has also been contacted by the Federal Bureau of Investigation "multiple times," most recently in 2014.  Id.  The FBI has, allegedly, conveyed that if Manouchehr became an informant on the Iranian community in the United States, "the FBI would use its influence to remove roadblocks hindering the adjudication of his applications" to become a lawful permanent resident.  Id. ¶¶ 19–22.  Manouchehr has consistently declined to act as an informant for the FBI.  Id. ¶ 22.

For six years after plaintiffs had submitted their applications, but before they filed this lawsuit, USCIS neither approved nor denied the applications. Plaintiffs allege that this is because their applications were subject to a secret, alternate process for adjudicating applications from certain immigrants, known as the Controlled Application Review and Resolution Program (CARRP). Plaintiffs allege that "in April 2008, USCIS created CARRP, an agency-wide policy for identifying, processing, and adjudicating applications for certain immigration benefits" in secret, and it only "[came] to light as a result of" documents released pursuant to Freedom of Information Act requests. Id. ¶ 25. They allege that "once an application is selected for processing under CARRP, USCIS removes the application from the agency's routine adjudication track and places it on a separate CARRP track." Id. ¶ 29. The applications on this separate track "are reviewed under protocols that lack any authority or foundation in statute or regulation" and "CARRP mandates denial or perpetual delay" of those applications, "regardless of the applicant's statutory eligibility for a particular immigration benefit." Id.

Plaintiffs further contend that applications are selected for inclusion in CARRP based on whether the applicant is a "known or suspected terrorist," which in turn is based on whether the individual is listed in the "Terrorism Screening Database" or has a "link to . . . an activity, individual or organization that has engaged in terrorist activity or been a member of a terrorist organization." Id. ¶¶ 26–29 (internal quotation marks omitted). The "Terrorism Screening Database" is, according to plaintiffs, maintained by the FBI, and that agency (as well as other intelligence agencies) is authorized to add individuals to the database. Id. ¶ 32. Pursuant to CARRP, once an individual is included in the Terrorism Screening Database, USCIS field officers are prohibited from granting that immigration application, "even if the applicant has satisfied all statutory and regulatory criteria." Id. ¶ 33. Thus, plaintiffs argue, although the immigration laws

grant the Secretary of Homeland Security the authority to adjudicate immigration applications, CARRP unlawfully delegates that authority to the FBI and to other agencies that add individuals to the Terrorism Screening Database.  Further, plaintiffs allege that CARRP requires USCIS to deny applications on national-security related grounds that are far broader than the ones articulated in the governing statute.  Id. ¶ 41 (citing 8 U.S.C. § 1182(a)(3)).

In June 2016, more than six years after plaintiffs filed their applications with DHS, they filed this action.  (The suit names several government officials as defendants.  For simplicity, the Court will refer to the defendants as DHS, USCIS, or the government.)  The suit, styled as one for mandamus relief, seeks an order under the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA) requiring USCIS to adjudicate the applications after six years of delay (Counts I, II, and III).  See id. ¶¶ 42–52.  It also asserts that CARRP's delegation of immigration decisions to other agencies besides USCIS violates the INA, and therefore seeks adjudication of the applications without the application of CARRP (Count II).  Id.  ¶¶ 47–50.  It further alleges that DHS's refusal to notify Manouchehr that his application was subject to CARRP violates his procedural due process rights under the Fifth Amendment (Count IV).  Id.  ¶¶ 53–55.  Finally, the suit contends that CARRP is a "rule" and therefore must be promulgated in accordance with the APA's notice-and-comment requirements under 5 U.S.C. § 553 (Count V), and the application of CARRP to Manouchehr is arbitrary and capricious under 5 U.S.C. § 706 (Count III).

On December 2, 2016 USCIS granted Razeyeh's petition, thereby recognizing Manouchehr as her immediate relative.  See Collett Decl. [ECF No. 12-1] ¶ 3; Pls.' 1st Supp. Br. [ECF No. 21] at 1.  But on February 10, 2017, USCIS denied Manouchehr's application for adjustment of status.  See Collett Decl. ¶ 4; Pls.' Opp'n [ECF No. 15] at 7.  The government argues that because plaintiffs seek an order requiring USCIS to act on their applications, their complaint

is now moot.  See Defs.' Mot. to Dismiss [ECF No. 12] at 7–8.  DHS also asserts that the ultimate relief that plaintiffs seek is not a particular procedure, but rather a different ruling on Manouchehr's application.  This relief, DHS argues, can only be obtained through the administrative process before an immigration judge and the Board of Immigration Appeals, followed by appeal to the appropriate circuit court, and thus the claims are also unripe.  See Defs.' Reply Br. [ECF No. 17] at 5–8 & n.1.  DHS also contends that plaintiffs have failed to state a claim under the INA because that act "does not create a private right of action to challenge the length of time or process USCIS takes to adjudicate I-130 and I-485 petitions."  Defs.' Mot. to Dismiss at 8.  Moreover, because CARRP is not a final agency action as defined by 5 U.S.C. § 704, plaintiffs have failed to state a claim under the APA.  See id. at 10 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990)).  And, finally, the government asserts that plaintiffs here failed to state a due process claim because Manouchehr cannot identify any constitutionally protected property or liberty interest in his adjustment of status application.  Id. at 12.

After the motion to dismiss was fully briefed, the Court ordered the parties to file supplemental memoranda to provide additional information and legal arguments.  See Order, July 21, 2017 [ECF No. 18].  Plaintiffs' supplemental brief confirms that Razeyeh does not request any further action with respect to her application but instead asserts that she is injured by USCIS's unlawful procedures in adjudicating Manouchehr's application.  Pls.' 1st Supp. Br. at 1–2.  It also confirms that removal proceedings are currently pending against Manouchehr before an immigration judge, and therefore asks that James McHenry, Acting Director of the Department of Justice's Executive Office of Immigration Review (the office responsible for immigration judges and the Board of Immigration Appeals), be added as a defendant.  Id. at 9.  The government's supplemental brief confirms that it believes that Manouchehr cannot assert his statutory or

constitutional claims before the immigration judge or the Board of Immigration Appeals, and may only raise them to the circuit court based on the existing administrative record.  See Defs.' 1st Supp. Br. [ECF No. 20] at 7.  The parties also identified the handful of other cases considering CARRP.  See Pls.' 1st Supp. Br. at 3–8; Defs.' 1st Supp. Br. at 4–7 & Ex. 2 [ECF No. 20-2]; Defs.' Notice of Supp. Authority [ECF No. 24].

The Court then ordered a second round of supplemental memoranda to address what affect, if any, the class certifications in a recent case on a similar topic, Wagafe v. Trump, No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wa. June 21, 2017), might have on their respective positions.  See Minute Order, July 21, 2017.  The parties both took the position that neither plaintiff here is a member of the certified classes in that case: Razeyeh because she is a U.S. citizen, and Manouchehr because his application was adjudicated before the applicable date for the class that was certified. See Pls.' 2nd Supp. Br. [ECF No. 22]; Defs.' 2nd Supp. Br. [ECF No. 23].  The Court therefore assumes without deciding that plaintiffs are not members of those classes and therefore that the proceedings in that case have no bearing on the issues before the Court in this matter.

## LEGAL STANDARD

The government has moved to dismiss for lack of subject matter jurisdiction and failure to state a claim.  See Fed. R. Civ. P. 12(b)(1), (b)(6).  When considering a motion to dismiss, a court presumes the truth of the complaint's factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, when evaluating either grounds for dismissal, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (internal quotation marks omitted) (failure to state a claim).

The party seeking to invoke the jurisdiction of the federal court bears the burden of establishing the court's jurisdiction.  See U.S. Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d

20, 24 (D.C. Cir. 2000). But plaintiffs are not the only ones with jurisdictional responsibilities; the court also has an "affirmative obligation to ensure that it is acting within the scope of its . . . authority." <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, "'[p]laintiff's factual allegations . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." <u>Id.</u> at 13–14 (alteration in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed. 1987)).

When evaluating a motion to dismiss for failure to state a claim, the court asks whether the facts alleged suffice "to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The complaint should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Thus "the complaint is construed liberally in the plaintiffs' favor." <u>Id.</u> A court "must not make any judgment about the probability of the plaintiffs' success," "must assume all allegations in the complaint are true (even if doubtful in fact)" and "must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." <u>Akteiselskabet AF 21, Nov. 2001 v. Fame Jeans, Inc.</u>, 525 F.3d 8, 17 (D.C. Cir. 2008).

## ANALYSIS

### I. JURISDICTION

Federal courts are limited to deciding "actual cases or controversies." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted) (citing U.S. Const. Art. III § 2). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." <u>Id.</u> The twin doctrines of mootness and ripeness can be described as "standing set

in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted); <u>see also</u> <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 189–94 (2000).

### A.  <u>Mootness</u>

The government's primary argument is that this case must be dismissed because it's moot. <u>See</u> Defs.' Reply Br. at 1.  The government is partially correct.

A case is considered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969) (internal quotation marks omitted).  Because federal courts are of limited jurisdiction, a court "has no authority to give opinions upon moot questions."  <u>Church of Scientology of Cal. v. United States</u>, 506 U.S. 9, 12 (1992) (internal quotation marks omitted).

To the extent that the relief the plaintiffs seek is an order requiring USCIS to act on their applications, then the government is certainly right: those claims are moot.  USCIS has now adjudicated the plaintiffs' applications (presumably prompted by this lawsuit) and no further relief is available on that front.

However, the government is incorrect that this is the only relief that plaintiffs seek.  The government argues that because the complaint is "styled in the nature of a writ of mandamus" and "sought to remedy what they considered an unreasonable delay in adjudicating their immigration applications," now that the applications have been adjudicated the case is over.  <u>See</u> Defs.' Reply Br. at 1.  But the text of the complaint is not so limited.  To the extent that there is ambiguity about the relief that plaintiffs seek, a court must construe that complaint liberally in plaintiffs' favor.  <u>See</u> <u>Kowal</u>, 16 F.3d at 1276.  It is clear that Counts I, II, and III of the complaint here seek in part to

compel USCIS to render a decision on plaintiffs' applications without further delay.  See Compl. ¶ 45 (in Count I, stating "Defendants owe Plaintiffs the duty to act upon their petition and application for adjustment of status"); ¶ 46 (in Count I, stating "[n]o other remedy exists for plaintiffs to resolve Defendants' unconscionable delay"); ¶ 50 (in Count II, stating "CARRP[] . . . [is] responsible for the unreasonable delay and/or unlawful constructive denial of Plaintiff Manouchehr's application"); ¶ 52 (in Count III, stating "[t]he unreasonable delay and constructive denial of Plaintiff Manouchehr's application" is arbitrary and capricious under the APA).  It appears that the basis for these claims is the Court's mandamus power (Count I) and the INA (Count II).

But Count II also alleges that CARRP "cedes the Department of Homeland Security's exclusive statutory authority" regarding immigration applications to other federal agencies that have "no statutory authority over citizenship or immigration matters."  Id. ¶ 49.  This raises a substantive claim regarding the legality of utilizing CARRP, not just a claim that USCIS must act promptly.  Count III likewise argues that CARRP is arbitrary and capricious under the APA because it is "not in accordance with the law, is contrary to the Constitution, and abdicates responsibility to apply . . . the immigration laws.  The decision denying Plaintiff Manouchehr's application for adjustment of status therefore violates the [APA], 5 U.S.C. § 706."  Id. ¶ 52.  This, too, is a substantive claim that seeks relief beyond just a timely ruling from USCIS.

Counts IV and V raise claims about CARRP's lawfulness, entirely separate from USCIS's delay in adjudicating plaintiffs' applications.  Count IV asserts that USCIS's "refusal to give Plaintiff Manouchehr notice that his application for adjustment of status was subject to CARRP . . . and any process for Plaintiffs to challenge that classification, violates the Due Process Clause of the Fifth Amendment."  Id. ¶ 55.  Count V contends that CARRP is a substantive rule as defined

by the APA, and therefore must be promulgated in accordance with notice-and-comment rulemaking procedures. Id. ¶¶ 56–59. Nothing in these two claims rests on USCIS's initial delay in adjudicating plaintiffs' applications, and therefore these claims are not mooted by USCIS's decisions in December and February.

Hence, Count I will be dismissed as moot in its entirety. Counts II and III will be dismissed as moot only insofar as they request that USCIS adjudicate plaintiffs' applications.[2] To the extent that Counts II and III request relief other than USCIS's prompt action on their initial applications— e.g., a declaratory judgment that CARRP is unlawful and a remand for USCIS to reconsider Manouchehr's application without applying CARRP—the motion to dismiss for mootness will be denied. The motion to dismiss Counts IV and V for mootness will likewise also be denied.[3]

## B. Ripeness, Finality & Exhaustion

DHS also argues, in the alternative, that plaintiffs' claims are not ripe. It contends that although plaintiffs' claims are framed as a challenge to the CARRP process, in reality the relief that they seek is that Manouchehr's adjustment of status application be granted. See Defs.' Reply Br. at 4–5. That relief can only be obtained through the administrative process followed by an appeal to the appropriate circuit court, which is still ongoing. Id. Thus, the government argues, the ultimate decision on Manouchehr's application to become a permanent resident is not yet ripe

---

[2] It is possible that plaintiffs' moot claims are still reviewable under the doctrines of voluntary cessation or capable of repetition yet evading review. See Friends of the Earth, 528 U.S. at 189–91 (describing the doctrines). However, plaintiffs have not raised these arguments.

[3] The government does not separately address whether Razeyeh's claims (as distinct from Manouchehr's) are moot because her petition was granted even though his application was denied. Plaintiffs, on the other hand, argue that her claims are not moot because she has an independent injury resulting from her immediate family member's application being adjudicated in an unlawful manner. See Pls.' Opp'n at 13–14 (citing Bangura v. Hansen, 434 F.3d 487, 499 (6th Cir. 2006)); cf. Escobar v. INS, 896 F.2d 564, 569 (D.C. Cir. 1990) (noting that U.S. citizen's rights can be implicated when immediate family is denied immigration benefits). However, because the Court determines that Manouchehr has standing, the Court not need decide whether Razeyeh does as well. See Horne v. Flores, 557 U.S. 433, 446 (2009) (citing Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264 & n.9 (1977)) ("Because [one plaintiff] clearly has standing to challenge the lower courts' decision, we need not consider whether [the other plaintiffs] also have standing to do so.").

for judicial review, and when it becomes ripe, the only court with jurisdiction to review it will be the relevant circuit court.  See id. at 5–7 & n.1.

It is well established that an individual may not challenge a denial of an adjustment of status to that of a lawful permanent resident in district court while removal proceedings are pending.  See Randall v. Meese, 854 F.2d 472, 481–82 (D.C. Cir. 1988).  There are jurisdictional and non-jurisdictional reasons why this rule is appropriate.  Article III standing demands that a claim be ripe before a court can consider it, that is, that the injury-in-fact have already occurred or be sufficiently imminent.  See Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2342–43 (2014); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127–28 & nn.7–8 (2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  In addition to the constitutional dimension of ripeness, under the APA an agency action is "subject to judicial review only when it is either (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in a court.'"  Cabaccang v. U.S. Citizenship and Immigration Servs., 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704).  Finality's close cousin, exhaustion, likewise requires that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts."  Id. at 1316 (internal quotation marks omitted) (quoting Reiter v. Cooper, 507 U.S. 258, 269 (1993)).

In the specific administrative scheme relevant here, the statute and its implementing regulations identify the proper avenue for redress.  The parties do not dispute that removal proceedings are pending against Manouchehr before an immigration judge.  See Collett Decl. ¶ 5; Feb. 10, 2017, Notice to Appear [ECF No. 17-1]; Pls.' 1st Supp. Br. at 3.  Therefore Manouchehr may pursue his application for adjustment of status before an immigration judge within the Department of Justice's Executive Office for Immigration Review.  See 8 C.F.R. §§

1240.1(a)(1)(ii), 1245.2(a)(1)(i).  If the immigration judge denies his application, he may appeal to another administrative body, the Board of Immigration Appeals.  <u>See</u> 8 C.F.R. §§ 1003.1(b), 1003.3(a).  And if that decision is adverse, he may appeal it (on limited grounds) to the relevant circuit court of appeals.  <u>See</u> 8 U.S.C. § 1252(b)(2) (exclusive review in courts of appeals), (a)(2) (certain matters not subject to judicial review).  He is not entitled, at any stage in this process, to review of his application in any district court.  <u>See id.</u> § 1252(a)(5), (b)(2).  And because the decision whether to grant an adjustment of status to that of a lawful permanent resident is a discretionary one, he is not entitled to have any court review that exercise of discretion.  <u>See id.</u> § 1252(a)(2)(B)(i).

Thus, there can be no dispute that <u>if</u> what the plaintiffs seek is review of USCIS's denial of Manouchehr's application, then this Court is not empowered to grant them any relief.  The agency decision is not final, their claims are not ripe, they have not exhausted the administrative review process, this Court is not the proper forum to review the final agency decision, and no court is empowered to review a discretionary decision.  However, USCIS's ruling on Manouchehr's application is not only what plaintiffs challenge, and the relief that they seek is not merely the approval of his application.  Rather, they argue that USCIS's procedure in adjudicating his application was unlawful, and the relief that they seek is for USCIS to reconsider his application, this time following procedures that are in accordance with the law.

Plaintiffs rely primarily on <u>McNary v. Haitian Refugee Center, Inc.</u>, 498 U.S. 479 (1991), for the proposition that the district court has jurisdiction over "general collateral challenges to [unlawful and] unconstitutional practices and policies used by the agency in processing applications" even if the district court does not have jurisdiction over the agency's determination of a particular application.  <u>McNary</u>, 498 U.S. at 492.

In McNary, the Supreme Court considered the manner in which the Immigration and Naturalization Service (INS, a predecessor to USCIS) processed applications for a farmworker amnesty program. The Immigration Reform and Control Act of 1986, which amended the INA, established an amnesty program for "special agricultural workers" (SAW). Id. at 483. Applicants for SAW status were required to demonstrate that they met certain statutory requirements; the first-level reviewer could then reject the application or recommend that the regional office approve it. Id. at 485. After the initial approval or denial, an appeals unit within the agency "was authorized to make the final administrative decision in each individual case." Id. A separate jurisdiction-stripping provision "expressly prohibited judicial review of such a final administrative determination of SAW status" except in the court of appeals, and only after a final administrative order of deportation. Id. A simple denial of SAW status (without an accompanying deportation order) could not be reviewed in any court, and no stage of the decisionmaking could be reviewed in a district court. See id. at 485–86.

Nevertheless, the Supreme Court determined that the district court had jurisdiction to hear the plaintiffs' claims. The plaintiffs alleged, in a class action, that they were injured by "unlawful practices and policies adopted by INS in its administration of the SAW program." Id. at 487. In particular, they alleged that the "interview process was conducted in an arbitrary fashion," including that "INS procedures did not allow SAW applicants to be apprised of or be given an opportunity to challenge adverse evidence on which denials were predicated, that applicants were denied the opportunity to present witnesses on their own behalf," that "competent interpreters were not provided," and that "no verbatim recording of the interview was made, thus inhibiting even meaningful administrative review." Id. at 487–88. The Court explained that the jurisdiction-stripping provision referred only to a court's power to review the agency's final decision whether

to grant or deny SAW status for a specific applicant, and thus did not bar review of a generalized challenge to the manner in which the program was implemented. Id. at 492–93. Thus, the Court concluded, "[b]ecause the administrative appeals process does not address the kind of procedural and constitutional claims respondents bring in this action, limiting judicial review of these claims to the procedures set forth in [the jurisdiction-stripping provision] is not contemplated by the language of that provision." Id. at 493.

The jurisdiction-stripping provision for the SAW program states that "there shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. § 1160(e)(1) (emphasis added). It continues, "[t]here shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation" and "[s]uch judicial review shall be based solely upon the administrative record." Id. § 1160(e)(3)(a)–(b) (emphasis added).

The Supreme Court in McNary identified several reasons why that text did not bar district court review of the plaintiffs' claims. First, the words "a determination" and "an application" in § 1160(e)(1) "describe[] a single act rather than . . . a practice or procedure employed in making decisions." McNary, 498 U.S. at 492. Moreover, the later reference to "such a denial" in § 1160(e)(3) "again refer[s] to a single act, and again mak[es] clear that the earlier reference to 'a determination respecting an application' describes the denial of an individual application.'" Id. (quoting 8 U.S.C. § 1160(e)(1)). Additionally, the statutory limitation of appellate review to the record established during the administrative proceeding "incorporates an assumption that the limited review provisions of [the jurisdiction-stripping provision] apply only to claims that have been subjected to administrative consideration and that have resulted in the creation of an adequate administrative record." Id. at 493. Therefore, any claims for which that administrative process

did not allow the creation of an adequate record could not be properly adjudicated through the administrative process and the subsequent limited judicial review that the statute prescribed. And finally, because the plaintiffs could not raise "the kind of procedural and constitutional claims" at issue in that case in the administrative proceeding, "limiting judicial review of these claims to the procedures set forth in [the jurisdiction-stripping provision] is not contemplated by the language of that provision." Id.

McNary is one of a line of cases attempting to distinguish the types of claims subject to an administrative process from the types of claims that can be raised directly in federal court. The D.C. Circuit has explained the general rule that where Congress has created "a special statutory review scheme . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)). A special statutory review scheme exists when "(i) such intent is 'fairly discernible in the statutory scheme' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" Id. (alteration in original) (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207, 212 (1994)); see also Elgin v. U.S. Dep't of Treasury, 567 U.S. 1, 8–10 (2012). A claim is not "of the type that Congress" expected to be funneled through the administrative review process if it is "wholly collateral to a statute's review provisions," is "outside the agency's expertise," or if following the administrative process would "foreclose all meaningful judicial review." Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010) (internal quotation marks omitted) (quoting Thunder Basin, 510 U.S. at 212–13). Moreover, a court must guard against a plaintiff who seeks "to short-circuit the administrative process through the vehicle of a district court complaint." Sturm, Ruger & Co. v. Chao, 300 F.3d

867, 876 (D.C. Cir. 2002) (internal quotation marks omitted) (quoting Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 858 (D.C. Cir. 2002)). These considerations are not "distinct inputs into a strict mathematical formula. Rather, [they] are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." Jarkesy, 803 F.3d at 17.

Here, the Court concludes that the type of claims plaintiffs raise are not just challenges to USCIS's ruling on Manouchehr's application—or to the immigration judge's or Board of Immigration Appeals' future ruling on Manouchehr's application—but rather are also to the allegedly unlawful processes and practices USCIS has employed in adjudicating such applications. The government's arguments regarding ripeness, finality, and exhaustion with respect to the agency's final decision on Manouchehr's application are therefore inapposite. Likewise, the INA's provisions limiting judicial review of the immigration judge's and the Board of Immigration Appeals' decision to the circuit court, and prohibiting judicial review of discretionary decisions, are also not relevant.

The jurisdiction-stripping provision pertinent here is similar to the text that the Supreme Court analyzed in McNary. Section 1252 in the current INA limits judicial review and is analogous to the jurisdiction-stripping provision analyzed in McNary (§ 1160(e)), and the provision that McNary referenced which provided for limited review of removal proceedings (codified at the time in § 1105a[4]). Section 1252 limits "[j]udicial review of orders of removal" and provides for the exclusive means of review, stating: "a petition for review filed in the appropriate court of appeals in accordance with this section shall be the sole and exclusive means of judicial review of an order of removal." 8 U.S.C. § 1252(a)(5) (emphasis added). It continues: "[w]ith respect to

---

[4] That version of 8 U.S.C. § 1105a is no longer in effect.

review of <u>an order of removal</u> . . . [t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."  <u>Id.</u> § 1252(b), (b)(2) (emphasis added).  The text of § 1252 uses the term "an order of removal" in the same manner that § 1160(e)(1) uses the term "a determination regarding an application."  Like the statutory text considered in <u>McNary</u>, then, this language refers to review of "a single act rather than . . . a practice or procedure employed in making decisions."  <u>McNary</u>, 498 U.S. at 492.  The language the statute uses to specify the standard of review is also similar to that discussed in <u>McNary</u>: here, the statute instructs that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based."  8 U.S.C. § 1252(b)(4)(A).

Unlike the text examined in <u>McNary</u>, however, there is some broader language in § 1252: subsection (b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section."  But that section, by its very language, is limited to review of a particular order ("a final order").  This terminology is therefore subject to the same analysis that the Court employed in <u>McNary</u> when it considered the phrase "<u>a determination</u> respecting <u>an application</u>" in § 1160(e)(1): namely, that the limitation on judicial review pertains to review of "a single act," that is, the order of removal, "rather than . . . a practice or procedure employed in making decisions."  <u>McNary</u>, 498 U.S. at 492.  And even more than this specific phrase, the provision as a whole falls within subsection (b), which begins as follows: "with respect to review of <u>an order</u> of removal."  <u>See</u> 8 U.S.C. § 1252(b), (b)(9) (emphasis added).  The language of section (b) as a whole, and subsection (b)(9) in particular, then, while sweeping in some ways, uses phrasing quite similar to that which the Supreme Court interpreted in <u>McNary</u> as referring only to

an adjudication of a particular application, not to a challenge to the procedure more generally. Indeed, the D.C. Circuit's "cases interpreting <u>McNary</u> hew to this distinction between collateral and particularized claims." <u>See</u> <u>Gen. Elec. Co. v. Jackson</u>, 610 F.3d 110, 126 (D.C. Cir. 2010). This Court therefore concludes that the applicable language here is too much like the language in <u>McNary</u> for this Court to deviate from the Supreme Court's analysis there, and thus § 1252 does not encompass plaintiffs' challenge to the process USCIS used to adjudicate Manouchehr's application.[5]

Rather, as in <u>McNary</u>, plaintiffs raise claims that are outside of the scope of the administrative process, and therefore beyond the scope of § 1252. Plaintiffs claim that they were not "apprised of or . . . given opportunity to challenge the adverse evidence on which denials were predicated." <u>McNary</u>, 498 U.S. at 487-88; <u>see</u> Compl. ¶ 34; Pls.' Opp'n at 7. Manouchehr asserts that he was not informed of CARRP or of the basis for his inclusion in that program. Compl. ¶ 34; Pls.' Opp'n at 7. Indeed, the core of plaintiffs' claim is that under CARRP any agency (not just DHS and the Department of Justice, to which the INA delegates immigration authority) can determine the outcome of an immigration application without explaining to the applicant why or presenting him or her with an opportunity to challenge the relevant evidence. <u>See</u> Compl. ¶ 32.

Plaintiffs and the government agree that at no point in the administrative proceeding— whether before USCIS, the immigration judge or the Board of Immigration Appeals—would they be able to raise their constitutional and APA challenge to CARRP. <u>See</u> Defs.' Reply Br. at 6;

---

[5] Plaintiffs also argue that § 1252's jurisdiction-striping provisions are inapplicable because they forbid district court review of the Secretary's decisions, and here plaintiffs allege that DHS did not make any decision at all on Manouchehr's application—instead, that it improperly outsourced that decision to the FBI based on the Terrorism Screening Database. <u>See</u> Pls.' Opp'n at 27–29. Plaintiffs rely on <u>Ibrahim v. U.S. Department of Homeland Security</u>, 538 F.3d 1250, 1254–56 (9th Cir. 2008), which held that a statute precluding district court review of certain Transportation Security Administration decisions did not apply to review of the No-Fly List, because that list was compiled by an office within the FBI. Because the Court finds that it has jurisdiction based on the text of § 1252 and <u>McNary</u>, it need not reach this argument.

Defs.' 1st Supp. Br. at 7; Pls.' Opp'n at 3. This is because, the government explains, the immigration judge would be empowered only to conduct his or her own review of Manouchehr's application for adjustment of status and render a decision on that application based on the statutory and regulatory criteria, not to consider any claims regarding USCIS's conduct. See Defs.' 1st Supp. Br. at 7. The Board of Immigration Appeals would likewise be empowered to review the decision on his application, but not any claims regarding USCIS. Id.

If plaintiffs cannot raise their claims in district court at this stage of the litigation, they argue that USCIS's potentially unlawful actions could only be reviewed in the circuit court, and that would not be effective judicial review because plaintiffs would be constrained to an inadequate record. The same concern raised in McNary is precisely why the Supreme Court concluded that the statute there did not preclude all judicial review. See McNary, 498 U.S. at 492–93; Daniels v. Union Pac. R.R. Co., 530 F.3d 936, 943 (D.C. Cir. 2008) ("[T]he availability of effective judicial review is the touchstone of the McNary exception."). As the Supreme Court reiterated more recently, courts should not assume that a claim must proceed through the administrative process if doing so would "foreclose all meaningful judicial review." Free Enter. Fund, 561 U.S. at 489 (quoting Thunder Basin, 510 U.S. at 212–13). Because plaintiffs' claims regarding USCIS cannot be raised in the administrative process, the circuit court would necessarily be hobbled when it considered those claims because it would be limited to the administrative record before the immigration judge and the Board of Immigration Appeals—and of course, there would not be a record relating to plaintiffs' challenge regarding USCIS and utilization of CARRP. See McNary, 498 U.S. at 493; 8 U.S.C. § 1252(a)(2)(D) (permitting judicial review of "constitutional claims or questions of law" in the circuit court).

Plaintiffs' claims regarding CARRP are therefore not of the type that Congress contemplated routing through the administrative review process. They are "wholly collateral to [the] statute's review provisions," because neither the immigration judge nor the Board of Immigration Appeals can review them, and thus they are "outside the agency's expertise." Free Enter. Fund, 561 U.S. at 489 (quoting Thunder Basin, 510 U.S. at 212). Indeed, this conclusion naturally flows from the Court's analysis of the text of § 1252: the administrative process is designed to allow an applicant to raise specific claims about his or her removal (and thus judicial review is limited to that same topic), but it is not designed to adjudicate broader challenges to the processes DHS uses in resolving applications. Finally, there is no indication that the plaintiffs here are trying "to short-circuit the administrative process." See Sturm, Ruger & Co., 300 F.3d at 876 (quoting Nat'l Mining Ass'n, 292 F.3d at 858). Hence, the factors identified in McNary and Jarkesy indicate that plaintiffs' claims are not of the type that must go through the administrative adjudication process. The Court therefore concludes that it has jurisdiction to consider those claims.

## II.    CLAIM UNDER THE IMMIGRATION AND NATIONALITY ACT (COUNT II)

The government argues, in the alternative, that plaintiffs have failed to state a claim under the INA because it does not create a private right of action "to challenge either the length of time or process USCIS takes to adjudicate I-130 and I-485 petitions." Defs.' Mot. to Dismiss at 8. Plaintiffs respond that they have stated a claim under 8 U.S.C. § 1255, the provision of the INA that vests discretion to adjust an immigrant's status in the Secretary of Homeland Security.[6]

---

[6] The text of the INA refers to the Attorney General as the government official responsible for immigration. In 2003, Congress amended the INA to identify the Secretary of Homeland Security as the responsible official, and stated that any references in the INA to the Attorney General for functions that have been transferred to the Department of Homeland Security "shall be deemed to refer" to the Secretary of Homeland Security. See 6 U.S.C. § 557 (2003); 8 U.S.C. § 1103(a).

Plaintiffs do not assert that § 1255 creates an explicit or implied right of action, and therefore the Court does not decide those issues. Rather, they argue that this Court has the power to review USCIS's allegedly unlawful actions under the Mandamus Act or pursuant to a court's inherent authority to review government action that is "ultra vires or in excess of statutory authority." Pls.' Opp'n at 29–30 (quoting Trudeau v. FTC, 456 F.3d 178, 189–90 (D.C. Cir. 2006)).

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But this jurisdiction is very limited: "a district court may grant mandamus relief if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (internal quotation marks omitted). Separate from the Mandamus Act, the D.C. Circuit has held that in some rare circumstances, "'judicial review is available when an agency acts ultra vires,' even if a statutory cause of action is lacking." Trudeau, 456 F.3d at 190 (quoting Aid Ass'n for Lutherans v. U.S. Postal Serv., 321 F.3d 1166, 1173 (D.C. Cir. 2003)). But this relief, like mandamus relief, is only available when "the plaintiff ha[s] no other means of obtaining review of the agency action." Ukiah Adventist Hosp. v. FTC, 981 F.2d 543, 550 (D.C. Cir. 1992).

That is not the case here. Rather, plaintiffs assert this same claim both in Count II as a violation of the INA, brought through mandamus or the court's inherent authority, and as a substantive violation of the APA in Count III. In Count III, plaintiffs contend that the agency acted in an arbitrary and capricious manner in violation of 5 U.S.C. § 706 when it acted in violation of "the immigration laws." Compl. ¶ 52. Hence, because plaintiffs are able to assert the same claim through the APA, they cannot obtain relief under the Mandamus Act or through the Court's

inherent power to review <u>ultra vires</u> agency actions.  <u>See</u> <u>Liu v. Novak</u>, 509 F. Supp. 2d 1, 9 n.3 (D.D.C. 2007) (citing <u>Action Alliance of Senior Citizens v. Leavitt</u>, 483 F.3d 852, 858 (D.C. Cir. 2007)); <u>Wagafe</u>, 2017 WL 2671254, at *9.  The Court will therefore grant defendants' motion to dismiss plaintiffs' claim under the INA in Count II for failure to state a claim.

### III.  CLAIMS UNDER THE ADMINISTRATIVE PROCEDURE ACT (COUNTS III & V)

Plaintiffs raise two claims under the APA: that the government acted arbitrarily and capriciously by subjecting Manouchehr's application to CARRP (Count III) and that the government failed to promulgate CARRP in accordance with the APA's notice-and-comment procedures (Count V).  The government's only argument with respect to Count III is mootness.  As explained above, the Court will deny the government's motion with respect to Count III insofar as it seeks relief other than demanding that USCIS take prompt action on Manouchehr's claim.

With respect to Count V, the government argues that CARRP is not a final agency action.  An agency may only issue substantive or legislative rules using the APA's notice-and-comment procedures, unless the rule falls into one of a few identified exemptions.  <u>See</u> 5 U.S.C. § 553(b).  However, only "final agency action[s]" are reviewable.  <u>See</u> <u>id.</u> § 704.  An agency action is final when it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) if the action is "one by which rights or obligations have been determined, or from which legal consequences will flow."  <u>Bennet v. Spear</u>, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).  The government argues that, even if this Court has jurisdiction, plaintiffs have failed to state a claim under the APA because CARRP is not final agency action.  The one court to consider this issue has held that CARRP is final agency action under the Supreme Court's test in <u>Bennet</u> and therefore is subject to an APA challenge.  <u>See</u> <u>Wagafe</u>, 2017 WL 2671254, at *10.  However, this Court does not currently have enough information to resolve this issue.  Neither party has

attached a copy of CARRP to their pleading or motion, nor has any party provided a citation for where CARRP might be found, or even explained whether the policy exists in a written format. Hence, the Court will deny without prejudice the government's motion to dismiss Count V at this time, but the government may renew this motion after further proceedings.

## IV.    CLAIM UNDER THE DUE PROCESS CLAUSE (COUNT IV)

Plaintiffs assert that the government's adjudication of Manouchehr's application in an unlawful manner violated his due process rights (Count IV). Compl. ¶¶ 56–60. The government counters that because adjustment of status is within the Secretary of Homeland Security's discretion, Manouchehr has no property or liberty interest that is protected by the Fifth Amendment, and therefore has not stated a claim. See Defs.' Mot. to Dismiss at 11–12. Plaintiffs respond, in turn, that the government again misunderstands the relief they seek: they do not ask for Manouchehr's adjustment of status application to be granted, but instead just for his application to be reviewed in accordance with the law. They therefore claim a due process right in having Manouchehr's application adjudicated by USCIS in accordance with the law (i.e., free from application of CARRP). Pls.' Opp'n at 21–22. The government does not respond to this argument in its reply brief.

The "Due Process Clause applies to all 'persons' within the United States, including aliens, where their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Fifth Amendment's] protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972). The question, then, is whether plaintiffs have a protected liberty or property interest here.

Numerous courts have held that discretionary immigration relief is not a protected property interest, although the D.C. Circuit has not opined on the issue.  See, e.g., McCreath v. Holder, 573 F.3d 38, 41 (1st Cir. 2009); Sandoval-Luna v. Mukasey, 526 F.3d 1243, 1247 (9th Cir. 2008); Hamdan v. Gonzales, 425 F.3d 1051, 1061 (7th Cir. 2005); Nativi-Gomez v. Ashcroft, 344 F.3d 805, 809 (8th Cir. 2003).  But as explained above, plaintiffs do not seek the discretionary relief of the Secretary granting Manouchehr's adjustment of status.   Rather, they seek USCIS's adjudication of Manouchehr's application in accordance with the law (i.e., not through CARRP). In particular, plaintiffs allege that "Manouchehr's compliance with the statutory and regulatory requirements vests in him a constitutionally-protected property and liberty interest" in having his application lawfully adjudicated.  Compl. ¶ 54.  The government, for its part, assumes the answer to this question in its briefing: it contends that "[w]here Plaintiff Manouchehr has no protected interest in his ability to adjust status—and in fact his application has been adjudicated in accordance with the law and regulations—the mere fact that the INA and regulations provide . . . a process to adjust status[] does not create a protected interest in [Manouchehr's] ability to adjust status."  Defs.' Mot. to Dismiss at 12; see also id. at 8 ("Plaintiffs' applications have now been adjudicated in accordance with the law and regulations"); Defs.' Reply Br. at 1 ("[B]ecause Plaintiffs' applications have been adjudicated—in accordance with the applicable statutes and regulations—there is simply no other relief that Plaintiffs may obtain from this Court at this time.").  This is not a particularly helpful analysis, because whether or not "[Manouchehr's] application has been adjudicated in accordance with the law and regulations" is exactly what is contested by plaintiffs.

However, the Court has not found any support for the proposition that Manouchehr has a constitutionally protected liberty or property interest in his application being adjudicated in

accordance with the law, given that the ultimate determination of whether his application will be granted is discretionary. None of the cases that plaintiffs cite support their theory. Rather, they stand for the point that all "persons" in the United States are protected by the Due Process Clause, and provide numerous examples of procedures that are insufficient when the government deprives a person of liberty or property. See Pl.'s Opp'n at 21–22. But none go to the question of what liberty or property interest, exactly, Manouchehr possesses that the government is allegedly infringing upon. Because plaintiffs have not identified any protected property or liberty interest of which Manouchehr is being deprived, the Court will grant the government's motion to dismiss Count IV.[7]

## V.   JOINDER

Under Federal Rule of Civil Procedure 19(a)(1)(A), joinder is proper if "in that person's absence, the court cannot accord complete relief among existing parties," provided that joinder "will not deprive the court of subject-matter jurisdiction." Here, Manouchehr's application is now pending before an immigration judge within the Executive Office of Immigration Review (which is part of the Department of Justice), and therefore DHS argues that it cannot grant the relief requested because it has lost jurisdiction over Manouchehr's application. Plaintiffs therefore ask that the Acting Director of the Executive Office of Immigration Review, James McHenry, be

---

[7] It is perhaps possible that Razeyeh could state a claim that her due process rights were violated by the government's allegedly unlawful adjudication of Manouchehr's application, although that type of claim is generally raised with respect to a non-citizen spouse rather than a non-citizen parent. See Escobar v. INS, 896 F.2d 564, 568–70 (D.C. Cir. 1990) (citizen has protected interest in adjudication of her petition for immediate relative status for her spouse and in adjudication of spouse's claim to remain in the country); Ali v. INS, 661 F. Supp. 1234, 1246–47 & n.6 (D. Mass. 1986) (citizen has constitutionally protected interest in lawful adjudication of Form I-130, petition for immediate relative status); Stokes v. INS, 393 F. Supp. 24, 29 (S.D.N.Y. 1975) (similar); see also Osunsanya v. U.S. Citizenship and Immigration Servs., No. 06-10625-RWZ, 2007 WL 484864, at *4–5 (D. Mass. Feb. 12, 2007) (finding non-citizen stated a procedural due process claim based on USCIS's denial of his application for permanent resident status following USCIS agent's alleged threats to plaintiff's U.S. citizen wife, in violation of her constitutional rights); Boukhris v. Perryman, 2002 WL 193354, at *2 & n.1 (N.D. Ill. Feb. 7, 2002) (similar). However, the complaint frames this count as solely an assertion of Manouchehr's procedural due process rights, and thus the Court will not reach the issue whether Razeyeh has any protected property or liberty interest in the adjudication of Manouchehr's application. See Compl. ¶ 54–55.

joined as a defendant.  However, as plaintiffs note in their supplemental brief, adding McHenry as a defendant is redundant because the Attorney General is already a defendant in this action.  The Attorney General, as head of the Department of Justice, is certainly empowered to grant the relief sought.  Therefore, because adding McHenry as a defendant would be redundant, the Court will deny this request.

## CONCLUSION

The government's motion to dismiss is granted in part and denied in part.  Count I will be dismissed as moot; Counts II and III will be dismissed as moot in part insofar as they seek USCIS's prompt action on plaintiffs' applications; the remainder of Count II will be dismissed for failure to state a claim; and Count IV will be dismissed for failure to state a claim.  Plaintiffs' motion to join James McHenry as a defendant will be denied.  A separate order will issue on this date.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: September 7, 2017