**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHAHNAZ KARAMI<br>20557 Summersong Lane<br>Germantown, MD 20874 | )<br>)<br>)<br>) | |
| MANOUCHEHR JAFARZADEH<br>20557 Summersong Lane<br>Germantown, MD 20874 | )<br>)<br>)<br>) | |
| Plaintiffs,<br>-V- | )<br>)<br>) | Civil Action No. 16-1385 (JDB) |
| ELAINE DUKE, Acting Secretary,<br>Department of Homeland Security<br>Washington, D.C. 20528 | )<br>)<br>)<br>) | |
| JAMES MCCAMENT, Acting Director<br>U.S. Citizenship & Immigration Services<br>20 Massachusetts Avenue, NW<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>) | |
| GREGORY L. COLLETT, District Director<br>U.S. Citizenship and Immigration Services<br>3701 Koppers St.<br>Baltimore, MD 21227 | )<br>)<br>)<br>)<br>) | FIRST AMENDED COMPLAINT |
| CONRAD ZARAGOZA, Field Office Director<br>U.S. Citizenship and Immigration Services<br>3701 Koppers Street<br>Baltimore, MD  21227 | )<br>)<br>)<br>)<br>) | |
| CHRISTOPHER WRAY, Director<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001 | )<br>)<br>)<br>)<br>) | |
| JEFFERSON B. SESSIONS, III, Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## I.     INTRODUCTION

1. Shahnaz Karami ("Plaintiff Shahnaz") is a lawful permanent resident of the United States and a citizen of Iran. Her husband, Manouchehr Jafarzadeh ("Plaintiff Manouchehr") is a native and citizen of Iran. On January 25, 2010, Plaintiffs' U.S. citizen daughter properly filed with U.S. Citizenship and Immigration Services (USCIS) a Petition for Alien Relative (USCIS Form I-130) on behalf of Plaintiff Manouchehr. Plaintiff Manouchehr filed a concurrent Application to Register Permanent Residence or Adjust Status as her immediate relative (USCIS Form I-485).

2. The alien relative petition and application for adjustment remained pending for more than six (6) years until Plaintiffs brought suit before this Court. For reasons that USCIS never disclosed to Plaintiff Manouchehr, his application was diverted to a parallel, extra-legal adjudication track administered by USCIS called the "Controlled Application Review and Resolution Program" ("CARRP"). This resulted in a predetermined denial of his application.

3. USCIS secretly established and implemented CARRP in 2008 without providing any public notice of its existence or development. The program prohibits USCIS field officers from approving applications for certain immigration benefits (including lawful permanent resident status) where the application is deemed to pose a "national security concern" as broadly defined under CARRP guidance. Instead, CARRP directs USCIS field officers to delay adjudication of, or deny outright, applications selected for processing under CARRP. The predictable result: individuals who are statutorily eligible for lawful permanent resident status, such as Plaintiff Manouchehr, unjustly face years of delay and eventual denial of their applications on pretextual grounds.

4. Plaintiffs Shahnaz and Manouchehr challenge the use of CARRP as a violation of the Article I, Section 8 of the Constitution, the Due Process Clause of the 5th Amendment of the Constitution, and the Administrative Procedure Act. Because CARRP directed USCIS not to approve any applications benefiting persons on the Terrorist Watch List, Plaintiffs asks the Court to enjoin USCIS to reopen his application for adjustment before USCIS and adjudicate it exclusive of CARRP.

## II.     JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, (federal question jurisdiction); 28 U.S.C. §2201 (the Declaratory Judgment Act); 5 U.S.C. §701 et seq. (the Administrative Procedures Act), and 28 U.S.C. § 1361 (regarding an action to compel an officer of the United States to perform his or her duty). Relief is requested pursuant to said statutes. This Court has previously found jurisdiction over the Form I-485 application. See *Liu v. Novak*, 509 F. Supp. 2d 1 (D.D.C. 2007).

6. Venue is appropriate in the United States District Court for the District of Columbia, because the actions which violate these statutes occurred in whole or in relevant part within the District of Columbia.

## III.     PARTIES

7. Plaintiff Shahnaz Karami ("Plaintiff Shahnaz") is a lawful permanent resident of the U.S. and citizen of Iran. She has continuously resided in the U.S. since August of 1978 (except for short trips abroad to visit family) when she came to the United States as a student. She completed her bachelor's degree in Mechanical Design and her Master's degree in Applied Mathematics as well as two years toward her Ph.D. in Applied Mathematics. Plaintiff Shahnaz was in immigration limbo because of her relationship to Plaintiff Manouchehr for over 10 years before she was finally granted permanent resident status in December of 2013.

8. Plaintiff Manouchehr Jafarzadeh ("Plaintiff Manouchehr") is married to Plaintiff Shahnaz, and is a citizen of Iran who has lived continuously in the United States for 37 years (except for three short trips back to Iran to visit family) since his first entry on a student visa in 1979. Plaintiff's most recent entry into the U.S. occurred after a brief trip to Iran to visit family members in 2011, and his re-entry occurred pursuant to an advance parole document issued by USCIS in connection with his pending application for adjustment (USCIS Form I-485).

9. Plaintiffs have been married for 35 years. They were married on April 2, 1982 in Hinds County, Mississippi. They have three adult U.S. citizen daughters, all of whom reside in the U.S. Their oldest daughter Razeyeh was born on March 7, 1984 in Jackson, Mississippi. Their second daughter Su'ad was born on May 7, 1987 in Jackson, Mississippi. Their youngest daughter Sana was born on March 14, 1992 in Gaithersburg, Maryland.

10. Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is a division of the U.S. Department of Homeland Security. It is the federal agency responsible for the adjudication of immigration applications.

11. Defendant U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS") is the cabinet- level federal parent agency of USCIS, and the agency responsible for the administration and enforcement of the country's immigration and naturalization laws.

12. Defendant GREGORY COLLETT is the Director of USCIS's District 6 – Baltimore District Office. He is the official in charge of the USCIS office where Plaintiff Manouchehr was interviewed. He is sued in his official capacity.

13. Defendant CONRAD ZARAGOZA is the Field Office Director of the Baltimore District Office of USCIS, and is the official in charge of the USCIS office where Plaintiff was interviewed. He is sued in his official capacity.

14. Defendant JAMES MCCAMENT is the Acting Director of USCIS, the agency responsible for adjudicating Plaintiff Manouchehr's application for lawful permanent resident status. As the Acting Director of USCIS, he has the final authority within USCIS for all decisions of his agency. He is sued in his official capacity.

15. Defendant ELAINE DUKE is the Acting Secretary of DHS and maintains ultimate responsibility for overseeing the actions of USCIS officials. She is sued in her official capacity.

16. Defendant JEFFERSON B. SESSIONS, III, is the Attorney General of the U.S. Department of Justice and has the ultimate authority over the operations of the Department of Justice. He is sued in his official capacity.

17. Defendant CHRISTOPHER WRAY, is the Director of the Federal Bureau of Investigation, the agency responsible for directing the denial of Plaintiff Manouchehr's application for adjustment of status and the agency that attempted to compel Plaintiff Manouchehr into service as an informant. He is sued in his official capacity.

### IV.     FACTUAL BACKGROUND

18. Plaintiff Manouchehr first entered the United States on a student visa in 1979. Since his initial entry, he has left the U.S. on only three occasions: once in 1984, again in 1994 and once in 2011. Following each temporary absence, he was either re-admitted as a student or paroled into the U.S. pursuant to the advance parole documents issued to him

      by USCIS.

19. Plaintiff Manouchehr's studies culminated in a Master's degree in Computer Science from Jackson State University in Mississippi in 1990, and a Master's degree in Business Administration from Jackson State in 1991.

20. Since June of 1991, Plaintiff Manouchehr has been employed by the Interests Section of the Islamic Republic of Iran, which operates out of the Embassy of Pakistan at 1250 23rd St. NW, Washington, DC 20037. His employment there has involved primarily cultural affairs and public relations.

21. Plaintiff Manouchehr filed his Form I-485 concurrently with the Form I-130 petition filed by his U.S. citizen daughter on January 25, 2010. The alien relative petition and application for permanent residence remained pending for over 6 years without adjudication by USCIS.  After Plaintiff Manouchehr and his daughter Razeyeh filed the original complaint in this matter, Razeyeh's I-130 petition was granted by USCIS on December 2, 2016, but Plaintiff Manouchehr's Form I-485 application was subsequently denied on February 10, 2017.

22. Since filing his application for adjustment of status in 2010, Plaintiff Manouchehr has endured years of harassment by the USCIS and FBI. He has been interviewed twice by USCIS in 2011 and 2014 in connection with his application for adjustment, with one aggressive interview lasting more than three hours and reaching back to questions regarding his student activism more than 30 years prior.

23. Plaintiff Manouchehr has also been interviewed and/or contacted by FBI Special Agents Matthew Halverson and Rebecca Bailey along with other agents multiple times.  These interviews consisted of requests for information about the Iranian community in the United States, Plaintiff Manouchehr's political leanings, his and his family's opinions of the Iranian government, and other matters unrelated to his immigration application. These agents most recently attempted to interview Plaintiff Manouchehr on July 9, 2014 via text message.

24. The content and nature of these interviews made clear that the FBI sought Plaintiff Manouchehr's cooperation as an informant, a role he is unwilling to undertake. In recent years the FBI increased its harassment of Plaintiff Manouchehr and made it extremely difficult for him to travel domestically by plane, subjecting him to extensive searches and on many trips air marshals travel with him. He was greeted at the airport by FBI agents upon his last return from his overseas trip. Since 2012, even his ancillary applications for work authorization and advance parole remained un-adjudicated despite

USCIS processing times of three months for such applications.

25. On more than one occasion, Plaintiff Manouchehr returned home from work and found FBI agents waiting to speak to him outside his home. On one particularly alarming occasion, Plaintiff Manouchehr left an appointment with his immigration attorney only to find FBI agents waiting for him in the parking lot outside of his attorney's office where they escorted him to a local park to question him more intensely outside the presence of counsel. While Plaintiff Manouchehr cooperated with these interrogations, he made it clear to the agents that he was not willing to become a government informant. It is Plaintiff Manouchehr's understanding that were he willing to be an informant, the FBI would have used its power to remove the roadblocks hindering the adjudication of his applications before USCIS.

26. More than thirty years have passed since Plaintiff Manouchehr was first contacted by the FBI. He has consistently denied ever having provided support to, expressed support for, or of having engaged in, terrorism or terrorist-related activity. Notwithstanding the absence of such evidence, the FBI persisted in monitoring his activity, pestering him to become an informant, and, by adding him to its Terrorism Screening Database (TSDB), subjected his application to USCIS's Controlled Application Review and Resolution Program (CARRP), pursuant to which his application was delayed and ultimately denied on pre-textual grounds.

27. Plaintiff Manouchehr's application for adjustment of status remained pending for over six years. It was not until Plaintiffs initiated suit against Defendants on June 30, 2016, that USCIS subsequently denied Plaintiff Manouchehr's application on February 10, 2017.

28. Plaintiff Manouchehr asserts that his case was designated under the Controlled Application Review and Resolution Program ("CARRP") based on his inclusion in the Terrorism Screening Database, and that as a result, USCIS delayed and denied his application for adjustment of status without exercising its discretion and in violation of its statutory duty. Plaintiff Manouchehr further asserts that USCIS and FBI attempted to exploit the suspended adjudication of his application pursuant to CARRP to compel him into service as a government informant.

### *The Controlled Application Review and Resolution Program ("CARRP")*

29. In April 2008, USCIS created CARRP, an agency-wide policy for identifying, processing, and adjudicating applications for certain immigration benefits. Promulgated

in secret, CARRP's policies and procedures have come to light as a result of the Government's production of documents in connection with Freedom of Information Act ("FOIA") requests and FOIA litigation.

30. CARRP's criteria for inclusion in its separate, extra-legal adjudications track are not tethered to any of the statutory requirements governing immigration. Under CARRP, a person is considered a "national security concern" if it is determined that he or she is a "Known or *Suspected* Terrorist" (KST) (*emphasis added*).

31. CARRP counts any and all individuals listed in the Terrorism Screening Database as KSTs. The Terrorism Screening Database, also known as the Terrorist Watch List ("the Watchlist"), is a vast and unreliable government watch list that is owned by the Federal Bureau of Investigations and administered by the National Counterterrorism Center. There is no due process procedure for placement on or removal from the Watchlist.

32. CARRP also includes individuals referred to as "Non-Known or Suspected Terrorists" (Non-KSTs). Non-KSTs are any person whose application indicates an "articulable link to prior, current, or planned involvement in, or association with, an activity, individual or organization" that has engaged in terrorist activity or been a member of a terrorist organization. Because of CARRP's expansive and overly broad definition of "national security concern," an applicant for lawful permanent resident status can still be subjected to adjudication under CARRP, even without being engaged in any unlawful activity or joining any unlawful organization.

33. Once an application is selected for processing under CARRP, USCIS removes the application from the agency's routine adjudication track and places it on a separate CARRP track. Applications on the CARRP track are not subject to standard adjudication and are reviewed under protocols that lack any authority or foundation in statute or regulation. With only limited exceptions, CARPP mandates denial or perpetual delay of applications placed on its adjudications track regardless of the applicant's statutory eligibility for a particular immigration benefit.

### *CARRP and the Terrorism Screening Database*

34. Nominations to the Watchlist are governed by vague selection criteria that permit inclusion in the database even if there is no reasonable suspicion that the person is actually involved in terrorist activity. The TSDB has come under widespread criticism for mismanagement and failures on the part of the FBI to adequately screen out individuals who pose no national security threat. As a result of the TSDB's over-

inclusive selection criteria and inadequate procedures for ensuring proper screening, the database is enormous; in 2009, it included roughly 400,000 individuals.

35. At each step in the processing of an application subject to CARRP, adjudication is steered towards one of two outcomes: delay or denial. In the initial stages of the adjudication of applications subject to CARRP, USCIS officers are instructed to perform an enhanced "eligibility assessment" to determine whether the applicant qualifies for the benefit. In the Orwellian world of CARRP, such "assessment" is far from the neutral review its name would suggest. To the contrary, CARRP instructs officers performing an "eligibility assessment" to search for any possible basis to deny an application, no matter how tenuous, so that "valuable time and resources are not unnecessarily expended" on investigating the supposed "national security concern" that triggered the application's selection for CARRP. Upon information and belief, eligibility assessments for applications subject to CARRP lead to pretextual denials that lack a legitimate basis in fact and law.

36. CARRP also cedes USCIS's control over the adjudication of immigration benefits to other federal agencies that lack statutory authority over immigration matters. Under CARRP, the law enforcement agency that "owns" the derogatory information on which the application's selection for CARRP is based can directly influence the ultimate decision on the application.

37. Executive agencies without any statutory authority over immigration matters can, under CARRP, request that an application be denied, granted, or held in abeyance indefinitely pending that outside agency's own investigation.

38. In fact, when an applicant is subjected to CARRP as a KST (because the applicant is listed on the Watchlist), CARRP prohibits USCIS field officers from granting the application, even if the applicant has satisfied all statutory and regulatory criteria.

39. At no point during the CARRP process is the applicant informed of the basis for his or her inclusion in CARRP, nor even that his or her application will be subjected to CARRP at all. No mechanism exists for an applicant to contest his or her selection for CARRP.

40. CARRP effectively creates two substantive regimes for the administrative adjudication of immigration applications: one for applications subject to CARRP, and one for all other applications. CARRP rules and procedures create heightened eligibility criteria that have no grounding in any of the statutes or regulations governing the immigration process. This is not what Congress intended.

## V.   STATUTORY AND REGULATORY FRAMEWORK

41.  Under Article I of the Constitution, the power to make immigration laws "is entrusted exclusively to Congress." *Galvan v. Press*, 347 U.S. 522, 531 (1954); U.S. Const. Art. I, § 8, cl. 4 ("The Congress shall have Power . . . [t]o establish an uniform Rule of Naturalization...").

42.  Federal law allows individuals present in the United States to adjust their immigration status to that of a lawful permanent resident under Immigration and Nationality Act § 245, 8 USC § 1145. United States citizens and lawful permanent residents may submit an I-130 immigrant visa petition for an immediate relative and the beneficiary may submit a concurrent I-485 application for adjustment of status at that time. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a)

43.  Immediate relatives are defined as "the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age when submitting a petition for an immediate relative." See 8 U.S.C. § 1151(b)(2)(A)(i).

44.  USCIS "shall" approve the I-130 petition once it determines "that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative." See 8 U.S.C. § 1154(b).

45.  Upon approval of the I-130 petition, the alien relative is eligible for adjustment of status which is determined "by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." See 8 U.S.C. § 1255(a).

46.  Immediate relative visas are not subject to numerical visa limitations and therefore once the I-130 petition is approved the "immigrant visa is immediately available to the alien relative at the time his I-485 application is filed. See 8 U.S.C. § 1151(b)(2)(A)(i), 8 U.S.C. § 1255(a).

47.  An applicant may be found inadmissible, and therefore ineligible to become a lawful permanent resident, if certain security-related grounds apply, including, inter alia, the applicant has engaged in terrorist activity, is a representative or member of a terrorist organization, endorses or espouses terrorist activity, or incites terrorist activity. *See* 8

U.S.C. § 1182(a)(3).

48. Congress has directed USCIS to process immigration benefit applications, including for adjustment of status, within 180 days. 8 U.S.C. § 1571(b).

## VI.   RELIEF

### FIRST CLAIM FOR RELIEF:
*Request for decision by USCIS exclusive of CARRP*

49. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1-48 as if fully set forth herein.

50. Plaintiff Manouchehr satisfied all of the statutory requirements for lawful permanent residence.

51. Defendants unreasonably delayed and ultimately denied his application for adjustment of status before USCIS pursuant to CARRP.

52. Defendant USCIS abdicated its duty to exercise its discretion in adjudicating Plaintiff Manouchehr's application for adjustment of status. Instead, USCIS ceded the decision to the FBI, which compelled the denial of the application based on Plaintiff Manouchehr's placement on the Watchlist.

53. Plaintiffs have exhausted any administrative remedies that may exist. No other remedy exists for Plaintiffs to resolve Defendants' unlawful conduct.

### SECOND CLAIM FOR RELIEF:
*Violation of Article 1, Section 8 of the Constitution*
*(Separation of Powers)*

54. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

55. CARRP violates the separation of powers enshrined by Articles I, II, and III of the Constitution. Under Article I, Section 8 of the Constitution, only Congress has the authority to "establish an uniform Rule of Naturalization." To secure lawful permanent residence, Plaintiff Manouchehr was therefore required to satisfy certain statutory criteria that are legislated by Congress.

56. However, CARRP creates additional, secret, non-statutory, substantive criteria that applicants must meet before USCIS will grant an application for

adjustment of status. Although Congress laid out a detailed framework for the determination of inadmissibility, USCIS effectively expands the grounds of inadmissibility by defining "national security concerns" significantly more broadly than the security-related grounds of inadmissibility set by Congress. Furthermore, CARRP cedes the Department of Homeland Security's exclusive statutory authority over applications to federal agencies with no statutory authority over citizenship or immigration matters.

57. The application of CARRP's unlawful, extra-statutory criteria and procedures to Plaintiff Manouchehr's case, and USCIS's abdication of its adjudicatory authority over applications for permanent resident status, are responsible for the unreasonable delay and unlawful denial of Plaintiff Manouchehr's application for adjustment of status.

### THIRD CLAIM FOR RELIEF:
*Administrative Procedure Act (Substantive Violation)*

58. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48 as if fully stated herein.

59. The unreasonable delay and denial of Plaintiff Manouchehr's application for lawful permanent residence was an arbitrary and capricious agency action because CARRP is not in accordance with law, is contrary to the Constitution, and abdicates responsibility to apply (not create) the immigration laws. The decision denying Plaintiff Manouchehr's application for adjustment of status therefore violates the Administrative Procedure Act, 5 U.S.C. § 706.

### FOURTH CLAIM FOR RELIEF:
*Fifth Amendment (Procedural Due Process)*

60. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48 as if fully stated herein.

61. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of liberty interests without due process of law. Plaintiff Shahnaz, as a lawful permanent resident of the United States, has a liberty interest in family unity. Defendants deprived Plaintiff Shahnaz of this interest without due process of law when her husband Plaintiff Manouchehr's application for adjustment of status was subjected to CARRP.

62. Plaintiff Shahnaz, as a lawful permanent resident, has, in addition to her liberty interest in family unity, liberty interests in both the maintenance and enjoyment of her marriage and her right to remain in the United States. Defendants interfered with both of these interests, when they subjected her husband's application for adjustment of status to CARRP. The Due Process Clause establishes a minimum level of procedural protection before those liberty interests can be deprived.

63. Subjecting Plaintiff Manouchehr's application for adjustment of status to CARRP without notice, without an explanation of the basis for the decision to subject his application to CARRP, and without any process for Plaintiffs to challenge the classification that subjected him to CARRP, violates the Due Process Clause of the Fifth Amendment.

64. Through their actions described in this Complaint, Defendants have violated the Procedural Due Process guarantees of the Fifth Amendment to which Plaintiff Shahnaz is entitled based on her 35 year old marriage to Plaintiff Manouchehr. Defendants' violation inflicts ongoing harm upon Plaintiffs Manouchehr and Shahnaz.

### FIFTH CLAIM FOR RELIEF:
*APA Notice and Comment*

65. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48 as if fully stated herein.

66. The CARRP Program constitutes a "rule" as defined by the APA, 5 U.S.C. § 551(4).

67. The APA requires administrative agencies, including DHS and USCIS, to promulgate substantive rules pursuant to its notice and comment provisions.

68. CARRP is a substantive rule, and does not fall within any of the exceptions to notice- and- comment requirements outlined at 5 U.S.C. § 553.

69. Defendants failed to provide to the public notice of CARRP or provide any opportunity for public comment, in violation of 5 U.S.C. § 553.

70. As a result of Defendants' failure to comply with the notice and comment provisions, Plaintiff Manouchehr's application for adjustment of status was unreasonably delayed and subjected to a predetermined negative decision, which deprived him of a fair and meaningful hearing on his claim for adjustment of status. The failure to provide notice

Case 1:16-cv-01385-JDB   Document 30   Filed 10/04/17   Page 13 of 14

and comment has had a substantive and preordained negative outcome on his application for lawful permanent residence.

## VII.  ATTORNEY'S FEES

71. As a result of Respondents' unlawful actions, Plaintiffs were required to retain counsel and pay counsel reasonable fees and expenses. Because Defendants were not substantially justified in pursuing their actions, Plaintiffs are entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Compel Defendants and those acting under them to reopen Plaintiff Manouchehr's application for adjustment of status before USCIS and direct the agency to adjudicate the application, exclusive of CARRP;

(2) Declare that CARRP violates Article 1, Section 8, Clause 4 of the United States Constitution (the naturalization clause/separation of powers); the Due Process Clause of the 5th Amendment, and the Administrative Procedure Act;

(3) Award Plaintiffs' costs and attorney's fees; and

(4) Grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Ladan Mirbagheri Smith
Ladan Mirbagheri Smith
DC Bar No.: 422367
Mirbagheri & Smith LLP
1688 East Gude Drive, Ste. #201
Rockville, MD 20850
P: 301 309 1223
F: 301 309 1229
lms@mirbagherismith.com
*Counsel for Plaintiff*

Dated: October 4, 2017

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via certified mail for parties for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Ladan Mirbagheri Smith</u>
Ladan Mirbagheri Smith
Mirbagheri & Smith LLP
1688 East Gude Drive, Ste. #201
Rockville, MD 20850