UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANOUCHEHR JAFARZADEH, et al.,

    Plaintiffs,

    v.

KEVIN McALEENAN, Acting Secretary, U.S. Department of Homeland Security,[1] et al.,

    Defendants.

Civil Action No. 16-1385 (JDB)

## MEMORANDUM OPINION

Manouchehr Jafarzadeh and Shahnaz Karami, husband and wife, have faced a long and difficult path to becoming lawful permanent residents of the United States. Karami waited for years for her application for lawful permanent resident ("LPR") status to be granted. Jafarzadeh also waited for years, only to have his application denied by U.S. Citizenship and Immigration Services ("USCIS"). When Karami and Jafarzadeh discovered that their applications had been subject to heightened review under USCIS's Controlled Application Review and Resolution Program ("CARRP") policy, they filed this lawsuit. Their amended complaint alleged that CARRP violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., and they sought to have Jafarzadeh's application for LPR status adjudicated without the influence of CARRP. However, in March 2019, an immigration judge granted Jafarzadeh LPR status in removal proceedings. Defendants now move for dismissal of this case as moot. Defs.' Renewed

---

[1] Kevin McAleenan is automatically substituted for Kirstjen Nielsen, the former Secretary of the Department of Homeland Security, pursuant to Federal Rule of Civil Procedure 25(d).

Mot. to Dismiss Pls.' Am. Compl. as Moot ("Defs.' Renewed Mot. to Dismiss") [ECF No. 58] at 1. For the reasons that follow, the Court agrees with defendants and finds that it must dismiss the case.

## BACKGROUND

Jafarzadeh is a citizen of Iran who has lived legally and continuously in the United States with his wife, Karami, an Iranian citizen and LPR of the United States, for over three decades. Jafarzadeh v. Nielsen, 321 F. Supp. 3d 19, 24 (D.D.C. 2018). Jafarzadeh applied for LPR status in January 2010, and his application remained pending for years with USCIS, a component of the Department of Homeland Security ("DHS"). Id. at 25. During that time, USCIS processed Jafarzadeh's application under its CARRP policy, a separate, secret track for processing certain applications that USCIS adopted in 2008. Id.; Defs.' Notice of Serv. of Admin. R. & Mem. of P. & A. ("Defs.' Notice of Serv.") [ECF No. 45] at 2. CARRP was "unknown to anyone outside the government until it was discovered in a court case that was filed in 2010." Jafarzadeh, 321 F. Supp. 3d at 38–39.

Jafarzadeh and his family members filed this suit in 2016 challenging, inter alia, the legality of the CARRP policy under the APA.[2] Id. at 25. USCIS denied Jafarzadeh's application and placed him in removal proceedings in February 2017. Id.; Am. Compl. [ECF No. 30] ¶ 27. At the conclusion of those proceedings in March 2019, an immigration judge granted Jafarzadeh LPR status. Order of the Immigration Judge, Ex. 1 to Defs.' Renewed Mot. to Dismiss [ECF No. 58-1] at 1.

---

[2] Plaintiffs' original complaint raised several other claims, but all claims except their APA claims were dismissed. See Jafarzadeh, 321 F. Supp. 3d at 24. In addition, Jafarzadeh's adult daughter, a U.S. citizen, was a plaintiff in this lawsuit when it was filed, but she was later substituted by Karami, Jafarzadeh's wife.

2

**LEGAL STANDARD**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A court may only exercise jurisdiction over actions presenting "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation omitted). When "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' . . . the action can no longer proceed and must be dismissed as moot." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477–78 (1990)). A plaintiff's personal stake is lost when "a court . . . cannot grant 'any effectual relief . . . .'" Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam) (citation omitted).

Two exceptions to mootness are relevant here. First, an exception exists for cases in which the question presented is "capable of repetition, yet evading review." Sosna v. Iowa, 419 U.S. 393, 399–400 (1975). "[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam). Second, "a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 174 (2000). The exception applies when a defendant "voluntarily changes its allegedly unlawful conduct" yet

remains "free to return to his old ways." Sharp v. Rosa Mexicano, D.C., LLC, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) (citation omitted).

## DISCUSSION

Defendants move to dismiss the case as moot on the grounds that plaintiffs no longer have any legally cognizable injury, the Court can no longer grant effectual relief, and there is no live controversy in this case. Defs.' Mem. of Law in Support of Their Renewed Mot. [ECF. No. 58] at 3–6. Plaintiffs respond that, even if the case is moot, an exception to mootness applies either because the harm caused by CARRP is capable of repetition yet evading review or because defendants are seeking to avoid liability through voluntary cessation of unlawful conduct. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss ("Pls.' Resp.") [ECF No. 62] at 6–12. Alternatively, plaintiffs propose two new forms of relief that the Court could grant, which in their view would render the case not moot. Id. at 12–16. Defendants reply that no exception to mootness applies and that, even if the Court had authority to grant the newly proposed relief, such relief is not sought in the amended complaint and thus should be rejected. Defs.' Reply [ECF No. 63] at 1–9.

The Court first considers whether Jafarzadeh's newly awarded LPR status moots this case. Finding that it does, the Court considers whether an exception to mootness applies. Because the case is moot and no exception applies, the case must be dismissed.

### I. THE CASE IS MOOT BECAUSE THE COURT CANNOT GRANT EFFECTUAL RELIEF.

Defendants have argued mootness at multiple stages in this case. After USCIS denied Jafarzadeh's application for LPR status (but before the immigration judge later granted Jafarzadeh LPR status), the Court concluded that any claims for relief based on USCIS's delay had become moot because the agency had adjudicated plaintiffs' applications. Sept. 7, 2017, Mem. Op. [ECF

4

No. 26] at 8. However, the Court noted that plaintiffs' complaint also made out APA claims that were not mooted by the denial of LPR status to Jafarzadeh and for which the Court could still grant relief in the form of a new adjudication of LPR status without the use of the allegedly unlawful CARRP policy. Id. at 8–10. Plaintiffs amended their complaint shortly thereafter to conform their claims to these new factual circumstances. See Am. Compl. [ECF No. 30].

A few months later, defendants moved to dismiss the amended complaint. This time, defendants argued that the case was moot because Jafarzadeh's application for status was before an immigration judge, who could "make a de novo determination of Jafarzadeh's eligibility for LPR status 'that is not affected by either USCIS's decision or CARRP.'" Jafarzadeh, 321 F. Supp. 3d at 28 (citation omitted). Thus, defendants argued, Jafarzadeh was essentially getting the relief he sought: adjudication of his LPR application without the influence of the allegedly unlawful CARRP policy. The Court concluded, however, that the case was not yet moot because the Court could still grant effectual relief in the form of a fresh adjudication of his LPR application. The Court explained:

> Renewing Jafarzadeh's application in the removal proceedings will not cleanse him of his injury, unless the IJ actually grants him LPR status. The Court, by sending Jafarzadeh's application back to USCIS for reconsideration, would be able to provide plaintiffs one chance more at achieving LPR status than they would receive from an IJ alone—a fact that suffices to keep the case alive.

Id. (emphasis added).

Which brings us to the current motion. Today, Jafarzadeh no longer needs "one chance more at achieving LPR status" because the immigration judge "actually grant[ed] him LPR status." See id. Because the door has closed on Jafarzadeh's last avenue for effectual relief, this case is moot.

5

## II. NO EXCEPTION TO MOOTNESS APPLIES.

Neither exception to mootness that plaintiffs identify applies to this case. Plaintiffs first argue that even if the Court finds that this case has become moot, plaintiffs should nevertheless be able to pursue their claims under the "capable of repetition, yet evading review" doctrine.

### A. The challenged action is not capable of repetition, yet evading review.

Plaintiffs argue that the first prong of the applicable test, which requires that "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration," Weinstein, 423 U.S. at 149, is met because USCIS's "pattern of delay and denial" followed by expedited removal proceedings "allows review of CARRP and its application to repeatedly evade the court's jurisdiction," Pls.' Resp. at 7. However, the Court finds that the duration of the challenged action is not so short as to evade review. Jafarzadeh applied for LPR status in 2010, had his application denied by USCIS in 2017, and was granted status in removal proceedings in 2019. From start to finish, the controversy over Jafarzadeh's LPR status lasted approximately nine years. The duration of the agency action here sharply contrasts with cases in which the Supreme Court has found this exception to mootness to apply—including in cases involving agency orders with short expiration dates, S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911), or the "normal 266-day human gestation period," Roe v. Wade, 410 U.S. 113, 125 (1973). This litigation has progressed slowly for many reasons, including material changes to factual circumstances that required plaintiffs to amend their pleadings, motions on novel legal questions that required more than the usual time and effort of the Court, and a lengthy government shutdown that briefly derailed the proceedings. Nevertheless, the underlying agency action is not so inherently evanescent that a court could never decide the question presented

before the controversy expired.  Hence, the Court finds that the first requirement is not met for finding that an issue is capable of repetition, yet evading review.

Plaintiffs also argue that the second prong, which requires that "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again," Weinstein, 423 U.S. at 149, is satisfied because Jafarzadeh and his wife will be subject to the same allegedly unlawful policy when they go to apply for naturalization, Pls.' Resp. at 8.  In fact, they aver, "the harm is not just reasonably likely to recur; it is required under CARRP, as CARRP applies to the adjudication of applications for naturalization as well as applications for permanent residency."  Id.  The problem for plaintiffs is that, having received LPR status, they are unlikely to ever again be subjected to the agency action challenged in this case: use of CARRP in adjudication of applications for LPR status.  Plaintiffs have attempted to expand the scope of the controversy in their briefing to include the possibility that they will be subject to CARRP as they apply for naturalization, but naturalization is not discussed in the amended complaint, and this case has always been about plaintiffs' attempt to become LPRs, not naturalized citizens.  The standards and procedures for applying for LPR status and naturalization are distinct and not properly considered the same agency action for the purpose of meeting the requirements for this exception to mootness.  To the extent that plaintiffs seek now to allege that they may be subject to the application of CARRP in naturalization proceedings, that issue is not before the Court.  Hence, this exception to mootness does not apply, notwithstanding plaintiffs' newly alleged speculation about what they may face if and when they apply for naturalization.

### B. Defendants did not voluntarily cease allegedly unlawful conduct.

Plaintiffs also contend that defendants' decision to allow Jafarzadeh's "application for adjustment of status to move forward without opposition" before the immigration judge constitutes voluntary cessation of allegedly unlawful conduct and therefore does not moot the case. Pls.' Resp. at 11. Defendants respond that they "ceased applying CARRP to [Jafarzadeh's] adjustment application when USCIS denied that application," at which point "there was no further action USCIS could have taken, as the case was referred to immigration court." Defs.' Reply at 6. Defendants note that their role in the adjudication of Jafarzadeh's application ended at the time of the denial of status and that "ICE—the agency that represents the United States in immigration court—is not (and has never been) a party to the instant lawsuit[] and acts according to its own independent evaluation of the merits of any particular case" before an immigration judge. Id.

The Court agrees with defendants that there was no voluntary cessation of conduct that would affect mootness here. First, it does not appear that defendants or their sister agencies have ceased any allegedly unlawful conduct. It is not allegedly unlawful to object (or not object) at a removal proceeding, so deciding not to object cannot be accurately described as voluntary cessation of unlawful conduct. And the allegedly unlawful agency action challenged in this case— use of CARRP in adjudication of applications for LPR status—has not ceased. Even if defendants had voluntarily ceased some relevant conduct, moreover, there is no concern that they are now "free to return to [their] old ways." Friends of the Earth, 528 U.S. at 189. Jafarzadeh and Karami have been granted LPR status, and there is no allegation that defendants will undo what has been done. Hence, this exception to mootness does not apply.

8

## III. THE COURT CANNOT GRANT EITHER OF THE TWO ALTERNATIVE REMEDIES THAT PLAINTIFFS PROPOSE.

Finally, plaintiffs argue that this Court can still offer two remedies to injuries they suffered as a result of the CARRP policy. The first proposed remedy involves money. Plaintiffs have incurred costs related to the removal proceedings, including for "a second application fee, . . . supporting medical documentation, and . . . counsel to represent him in removal proceedings." Pls.' Resp. at 15. However, the APA does not extend judicial review of agency action to cases seeking "money damages." 5 U.S.C. § 702. Monetary relief in an APA case may only follow as "a mere by-product of that court's primary function of reviewing [agency action]." Bowen v. Massachusetts, 487 U.S. 879, 910 (1988). For example, a state's claim to monetary benefits to which it believed it was entitled under a federal statute (such as the Medicaid Act) is not a claim for "money damages." See id. at 909–912. But here plaintiffs seek direct compensation for costs they allegedly incurred—not benefits to which they are entitled or monetary relief that flows as a "mere by-product" of invalidating CARRP. The requested relief thus constitutes money damages, and such relief is not available in a lawsuit brought under the APA.

The second proposed remedy involves time. Plaintiffs argue that but for the delays caused by the CARRP program, they would have received their LPR status—and thereby have become eligible to apply for naturalization—much earlier. See Pls.' Resp. at 13. They suggest that the Court could award adjustment of status nunc pro tunc to "no later than 2012" when their "applications for permanent residency should have been positively adjudicated." Id. But such relief is similarly unavailable. Plaintiffs' request for nunc pro tunc adjustment of status is newly requested in plaintiffs' brief in response to defendants' motion to dismiss—more than a year after the filing of the amended complaint—and plaintiffs have not sought leave to (again) amend the

9

complaint to add such claims for relief. Hence, this form of proposed relief is not properly before the Court to consider.

Even if plaintiffs had amended their complaint to seek such relief, it would not be available. Defendants argue—and the Court agrees—that the proposed award of nunc pro tunc status would require the Court to "implicitly . . . overrule USCIS's discretionary decision" to grant an adjustment of status in Jafarzadeh's case. Defs.' Reply at 8. But as this Court has explained before, Jafarzadeh is "not entitled to have any court review that exercise of discretion." Jafarzadeh, 270 F. Supp. 3d at 306 (citing 8 U.S.C. § 1252(a)(2)(B)(i)). There is no meaningful distinction between overruling USCIS's discretionary decision to deny Jafarzadeh's application for status and backdating the immigration judge's decision to the time that USCIS adjudicated (or should have adjudicated, according to plaintiffs) the application. Either action essentially alters USCIS's discretionary decision. Because the Court lacks jurisdiction to make such an alteration, this relief is not available.[3]

## CONCLUSION

Jafarzadeh's award of LPR status moots this case because there is no longer any effectual relief that can be granted with respect to the claims alleged in plaintiffs' amended complaint. No exception to mootness applies because the harm is not capable of repetition, yet evading review, and defendants have not voluntarily ceased the allegedly unlawful conduct. Finally, the alternative

---

[3] Even if the relief was properly pleaded and the Court had jurisdiction to grant such relief, nunc pro tunc adjustment of status has been held to be available only in "certain exceptional cases," Iavorski v. U.S. Immigration & Naturalization Serv., 232 F.3d 124, 130 n.4 (2d Cir. 2000), including "where agency error would otherwise result in an alien being deprived of the opportunity to seek a particular form of . . . relief," Edwards v. Immigration & Naturalization Serv., 393 F.3d 299, 310–11 (2d Cir. 2004). Here, plaintiffs would not be deprived of the opportunity to seek naturalization but for the Court granting the requested adjustment of status. Plaintiffs simply want their applications to be adjudicated more quickly. Accordingly, nunc pro tunc adjustment of status still would not be appropriate here.

forms of relief that plaintiffs propose to keep this action alive—money damages or adjustment of status nunc pro tunc—are not available. Accordingly, the case must be dismissed as moot.

A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: May 30, 2019